## LAMAR et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. June 4, 1919.)

No. 232

1. MONOPOLIES ⬦➡29—EVIDENCE OF CONSPIRACY TO RESTRAIN TRADE.

A conspiracy to restrain interstate or foreign commerce, in violation of Sherman Anti-Trust Act July 2, 1890, § 1 (Comp. St. § 8820), is proved by proving the forbidden meeting of minds, like a common-law conspiracy, and proof of an overt act is not essential.

2. MONOPOLIES ⬦➡29—INSTIGATING STRIKES AS CONSPIRACY TO RESTRAIN FOREIGN COMMERCE.

On a charge of conspiracy to prevent the manufacture and export of munitions of war, in violation of the Sherman Act (Comp. St. § 8820 et seq.), it is no defense that the end was sought to be accomplished by instigating strikes among workmen, which, if conducted for legitimate purposes, would have been lawful.

In Error to the District Court of the United States for the Southern District of New York.

Criminal prosecution by the United States against David Lamar, Henry B. Martin, and others. Judgment of conviction, and defendants Lamar and Martin bring error. Affirmed.

Certiorari denied 250 U. S. 673, 40 Sup. Ct. 16, 64 L. Ed. ——.

The plaintiffs in error, together with one Rintelen, and with also Monett, Buchanan, Taylor, Schultheis, and Fowler, were indicted under the Sherman Act (Act July 2, 1890, c. 647, 26 Stat. 209 [Comp. St. §§ 8820–8823, 8827–8830]), in December, 1915, for a conspiracy "to restrain foreign trade and commerce," and to "restrain, hinder, and prevent the transportation (of munitions of war manufactured in

---

the United States) in said foreign trade and commerce." The sufficiency of indictment was considered in United States v. Rintelen (D. C.) 233 Fed. 793.

On April 27, 1917, all the above-named defendants were brought to trial. Indictment was dismissed as to Monett, the jury disagreed as to Buchanan, Taylor, Schultheis, and Fowler. Rintelen and these plaintiffs in error were convicted and sentenced. Rintelen sought no review; Lamar and Martin did so, promptly so far as taking writ is concerned, but then delayed until November 18, 1918, to procure the settlement of a bill of exceptions, and did not file the record in this court until January 3, 1919, and after a motion to dismiss had been made on December 28, 1918.

Both plaintiffs in error addressed the court personally, and they jointly filed a printed brief prepared for them by counsel.

I. R. Oeland and Raymond H. Sarfaty, Sp. Asst. Attys. Gen., for the United States.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The indictment (in a form long used, and approved, among other cases, in Nash v. United States, 229 U. S. 373, 33 Sup. Ct. 780, 57 L. Ed. 1232), sets forth that there are many persons in the United States engaged in the manufacture, sale, and export of what are generally known as "military and naval stores" and "munitions of war," that such occupation or business is lawful, and that defendants conspired to stop the business; i. e., stop manufacture, transportation, and distribution, by certain proposed "means and methods," which may be summarized as "instigating" strikes on the part of all employés concerned in such making and distribution, and so "instigating" both by written and printed exhortation and by distribution of money among "officers and persons in charge and control of various labor organizations."

Of the facts revealed by testimony it is enough to say that the jury were amply warranted in believing that Rintelen was a German who came to the United States in possession of large funds (over $500,000), with the purpose of stopping or trying to stop the great and increasing flow of war material, which by 1915 was setting from America to Europe, and practically all going to the nations allied against Germany. If he did not bring the money aforesaid for this sole purpose, he was certainly willing to use large sums to secure his end. He met these plaintiffs in error, and with them agreed to do, or have them do (as active agents), the very things charged in the indictment. It is true the evidence shows practically no fruit, no substantial result, from a very ambitious plan, except that Rintelen was relieved of a considerable portion of his funds; but if the formation of the plan, the formulation of purpose, the meeting of minds in an agreement to stop a trade, always lawful, however repugnant temporarily to Germans and to pacifists always, be a crime, the judgments complained of are right.

It does not militate against this conclusion, to urge (as has been done) that the object of the statute of July 2, 1890, was not to prevent agitation against a trade believed by defendants to be both impolitic and immoral, or to assert (what is true) that defendants failed in effecting any hindrance of trade, or (what we may assume as true) that no one of the defendants had any suspicion that the Sherman Act stood in the way of either forming or performing their scheme for stopping war in Europe through lack of supplies, and keeping the United States out of war by inability to make or deal in the means thereof.

So far as the statute is concerned, the object or intent of the Sherman Act must, like that of every other written law, be gathered from its four corners as far as possible, and always if the words employed are clear and apt. Such is the case here, and no department of lawful commerce is left to be restrained or hindered by those who, for reasons that have not yet appealed to the Legislature, think it worthy of suppression.

[1] So far as the lack of success of the plaintiffs in error is relied on, it is enough to point out, what was specifically held in the Nash Case, supra, that conspiracy under the Sherman Act is proved by proving the forbidden meeting of minds; it is like a common-law conspiracy, not like those denounced by section 37, Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1096 [Comp. St. § 10201]), where an overt act is a necessary ingredient of crime. Likewise any lack of intent to violate the statute cannot be relied on here. Personal intent usually, and certainly here, means no more than an intention to do what was done; therefore, if (as the jury found) defendants intended to hinder and restrain export trade in war munitions, the fact that they had no suspicion of thereby violating the Sherman Act is a matter of no importance, and is immaterial.

[2] It is further contended that, assuming everything covered by the evidence as proven and all the legal rules above adverted to as correct, it still remains true that the only suggested means or method of restraining trade was to strike—to induce laborers to peacefully quit work; and such acts are lawful under the statute of October 15, 1914, commonly known as the Clayton Act (38 Stat. 730, c. 323). It is said to follow that, if doing this lawful act should produce restraint of trade, the later statute prevents the operation of the earlier.

Whether the Clayton Act has to the extent indicated nullified the Sherman Act is a question that need not be discussed; but we do hold it as clear that no change has been wrought in the law of conspiracy as applicable to this case. It may be that, where the intent of those who foment strikes or themselves quit work after and as a result of agreement with their fellow workmen is to advance their own wage interests, or otherwise improve their conditions of life, the Clayton Act produces legality by forbidding legal interference with their doings. This may be admitted for argument's sake, without expressing opinion. But we do hold that where it is charged (as here) that the intent was solely to restrain foreign trade, and where it is proved (as here) that the proposed instigation of strikes bore no relation what-

ever to. the welfare of the strikers, then .at most and best the strike becomes nothing more than an instrument or means, legal in itself, but used only for an illegal end.

The argument for plaintiffs in error confounds the means with the end. The end or object of the proven conspiracy was not to call strikes, but to restrain or rather suppress foreign trade. That object is as illegal as ever; the Clayton Act assuredly does not legalize it. If that be granted, the elementary rules of law apply, and legality of means cannot excuse illegality of purpose or object.

This cause was tried below by counsel of skill for all the defendants. Those who took this writ delayed hearing for a time, not in our opinion capable of excuse, and were finally heard in person. They profess lack of time and means to procure local counsel on appeal; the brief submitted for them is stated to be the work of a member of the bar of another circuit. That time enough was afforded, or rather taken, is plain; the asserted lack of means has induced us to scan with particularity the whole record, whether adverted to in brief or argument or not; after doing so we are unable to discover error, and order the judgments affirmed.