## Ex parte LAMAR.

(Circuit Judge, Second Circuit. April 2, 1921.)

1. **Habeas corpus ⚎47(1)—Circuit judge has authority to grant writ.**

A circuit judge of the United States, sitting as a judge and not as a court, *held* to have authority to grant a writ of habeas corpus, and under Rev. St. § 755 (Comp. St. § 1283), to be required to do so on presentation of a sufficient petition.

2. **Habeas corpus ⚎29—Judgment not invalidated by illegal bringing of defendant into jurisdiction.**

Petitioner, while serving a sentence for a criminal offense in the United States penitentiary at Atlanta, Ga., was taken by the warden on a telegram from the Attorney General, and without the institution of proceedings for his removal under Rev. St. § 1014 (Comp. St. § 1674), into the Southern district of New York, and on his arrival there was brought into court on a writ of habeas corpus ad prosequendum, and was tried and convicted for another offense. *Held* that, while he was brought into the district of trial illegally and without due process of law, such fact did not affect the jurisdiction of the court to try him, nor invalidate its judgment, so as to afford ground for his discharge from imprisonment thereunder on habeas corpus.

3. **Criminal law ⚎100(3)—Defendant, serving term of imprisonment, may be tried for another offense.**

That a defendant is serving a term of imprisonment under sentence for a criminal offense *held* not a bar to his trial for another offense.

4. **Criminal law ⚎15—Pending prosecution not affected by repeal of statute.**

Under Rev. St. § 13 (Comp. St. § 14), a pending prosecution for violation of a statute is not affected by a repeal of the statute, though without a saving clause.

5. **Criminal law ⚎995(1)—What constitutes judgment.**

In the absence of a federal statute on the subject, ▼ here under the practice no judgment roll is made up, the commitment ᴘaper on which a convicted defendant is committed for imprisonment must be treated as the judgment, and a certified copy of the clerk's criminal minutes indorsed thereon is to be considered as a part of the sentence imposed by the judge.

6. **Criminal law ⚎1210—Sentence held valid.**

Where a defendant was tried and convicted while serving a term of imprisonment under a prior conviction for a different offense, a judgment imposing a term of imprisonment in a different institution from the one where he was then confined, to commence on the expiration of his prior term, *held* within the power of the court, and not void for indefiniteness.

At Law. On petition of David Lamar for writ of habeas corpus. Writ dismissed.

Stephen C. Baldwin, of Brooklyn, N. Y., and Elijah N. Zoline, of New York City, for petitioner.

Francis G. Caffey, U. S. Atty., of New York City (George W. Taylor, Asst. U. S. Atty., of New York City, of counsel), opposed.

Before MANTON, Circuit Judge.

MANTON, Circuit Judge. The petitioner sues out this writ of habeas corpus, declaring that he is illegally restrained of his liberty. Heretofore, and on the 3d of December, 1914, he was tried and convicted of the charge of impersonating a federal officer, an offense under the

⚎For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Criminal Code of the United States (Comp. St. § 10165 et seq.), before Hon. C. W. Sessions, District Judge, and sentenced to two years' imprisonment at the United States penitentiary at Atlanta, Ga. He appealed to the Circuit Court of Appeals, and later to the Supreme Court. Ultimately this conviction was affirmed (240 U. S. 60, 36 Sup. Ct. 255, 60 L. Ed. 526), and the petitioner began the service of the sentence so imposed on December 3, 1914, at the United States penitentiary at Atlanta. While released on bail, and pending his appeal from this conviction, he committed another breach of a section of the United States Criminal Code (Act July 2, 1890 [Comp. St. § 8820 et seq.]), to wit, conspiracy in restraint of foreign commerce. He was tried on this charge and convicted, together with two others, Franz Von Rintelen and Henry B. Martin, and on the 21st of May, 1917, he was sentenced to one year on this charge. He appealed from this conviction to the Circuit Court of Appeals of the Second Circuit, where his conviction was affirmed. 260 Fed. 561, 171 C. C. A. 345. Later he applied for a writ of certiorari to the Supreme Court, and this was denied. 250 U. S. 673, 40 Sup. Ct. 16, 63 L. Ed. 1200. When his trial upon the conspiracy charge was noticed, he was actually serving the prison term for his first offense, that is, the conviction for impersonating a federal officer. The claim now is:

First. That his constitutional rights have been violated in (a) that he was taken from the penitentiary at Atlanta, Ga., without removal proceedings and against his protest, and placed on trial in New York in violation of his constitutional rights to due process of law; that he could not in any event be placed on trial while undergoing sentence on a previous conviction; (b) that the Circuit Court of Appeals denied the right of assistance of counsel as guaranteed to him by the Sixth Amendment of the Constitution of the United States.

Second. That the provision of the Sherman Act as to foreign commerce, which applied to the facts which were proven against the petitioner and which has been held to amount to a crime, was repealed, and that, although indicted by the grand jury for this offense before the repeal of this provision of the Sherman Act, the right to prosecute was impliedly ended.

Third. That the sentence which was imposed on this conviction of conspiracy ran concurrently with the sentence which the petitioner served for the crime of impersonating a federal officer, and that therefore the petitioner has satisfied the requirements of this later sentence by serving his time when he returned to the Atlanta prison after the trial on the conspiracy charge, when he served approximately one and a half years, the balance of his two-year term.

Fourth. That the commitment issued by the clerk is void.

[1] The power of a circuit judge to issue a writ of habeas corpus, sitting as a judge and not as a court, is involved, and I shall preliminarily dispose of that question before considering the other points. The statute (Act Aug. 29, 1842, c. 257, 5 Stat. 539 [Comp. St. § 1279 et seq.]) provides that the Supreme, Circuit, and District Courts have power to issue writs of habeas corpus. The several justices and judges of the said courts, within their respective jurisdictions, shall have pow-

er to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty. By Act March 3, 1911 (36 Stat. 1167, c. 231, § 289 [Comp. St. § 1266]), the Circuit Courts were abolished and their functions were transferred to the District Courts.

In Whitney v. Dick, 202 U. S. 132, 26 Sup. Ct. 584, 50 L. Ed. 963, it was held that the Circuit Court of Appeals is a court created by statute, and is not endowed with original jurisdiction, and since there is no language in the statute which can be construed into a grant of power to issue a writ of habeas corpus, unless it is one in aid of the jurisdiction already existing, the court is not authorized to issue original or independent writs of habeas corpus. The court said:

"The writ of habeas corpus is not the equivalent of an appeal or writ of error. It is not a proceeding to correct errors which may have occurred in the trial of the case below. It is an attack directly upon the validity of the judgment, and, as has been frequently said, it cannot be transformed into a writ of error. It is doubtless true that if the language of the Court of Appeals Act was fairly susceptible of two constructions, one granting and the other omitting to grant power to issue a writ of habeas corpus, the great importance of the writ might justify a construction upholding the grant. * * * But in the Court of Appeals Act there is no mention of habeas corpus, no language which can be tortured into a grant of power to issue the writ, except in cases where it may be necessary for the exercise of a jurisdiction already existing."

But the application for the writ is made here to a Circuit Judge of the Circuit Court of Appeals, and not to the court. The petition upon which the same is based advances the claim that the petitioner is restrained of his liberty, and that his constitutional rights have been violated. The power is given to the justices and judges of the courts, within their respective jurisdictions, to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty. And the application for a writ of habeas corpus under Act Feb. 5, 1867, c. 28, § 1; Revised Stat. § 754 [Comp. St. § 1282]), "shall be made to the court or justice or judge authorized to issue the same by complaint in writing," etc. And by the same act (Rev. Stat. § 755 [Comp. St. § 1283]) it is provided that a judge to whom such application is made shall forthwith award a writ of habeas corpus unless it appears from the petition itself that the party is not entitled thereto. While the Circuit Courts have been abolished, there is still the office of circuit judge as created by the statute. While a circuit judge may not issue a writ of habeas corpus as one of the members constituting the Circuit Court of Appeals, there is still the authority vested in him as a circuit judge to do so, and there is a mandatory provision of the statute requiring him to issue a writ of habeas corpus if the petition be sufficient.

It will be observed that section 716 of the Revised Statutes of the United States (Comp. St. § 1239) provides that they (the courts) shall have power to issue all writs not specifically provided for by statute which may be necessary for the exercise of their respective jurisdictions and "agreeable to the usages and principles of law." This statute authorizing writs of habeas corpus was passed by the first Congress of the United States, sitting under a constitution which had declared that—

"The privilege of the writ of habeas corpus should not be suspended, unless when in cases of rebellion or invasion, the public safety may require it." Const. art. 1, § 9, cl. 2.

The inference of this injunction of the Constitution has, with peculiar force, impressed upon me the obligation of providing efficient means by which this great constitutional privilege should receive life and activity, for if the means be not in existence the privilege itself will be lost. For this obligation the Congress gave and has continued to give since, in each subsequent enactment, the courts the power of awarding writs of habeas corpus.

The right to grant this important writ is given to every judge of the District Court. It has been held that the power vests in a Justice of the Supreme Court. Ex parte Bollman, 8 U. S. (4 Cranch) 95, 2 L. Ed. 554. When the Circuit Courts were abolished, the statute providing for the right of a judge to grant the writ of habeas corpus was not repealed or amended, thus taking away the power from a circuit judge. Circuit judges have become appellate judges, and while they have no original jurisdiction as a court, they have reserved to them the right thus vested by the statute and by the ancient law. I therefore conclude that I have the power to grant the writ of habeas corpus.

[2] The proof shows that Lamar was removed, while a prisoner serving a term under the first sentence, from the United States penitentiary at Atlanta to the Southern District of New York by the medium of a telegram which was sent by the Attorney General, directing the warden of the prison to produce him in New York City. It is by stipulation proved that on the 25th of March, 1917, a printed notice of trial, entitled United States v. Rintelen, Lamar and Martin and others, was served upon the petitioner; that Lamar at once consulted his attorneys at Atlanta and conferred with them about his case. On their advice, an application was prepared for the purpose of obtaining a continuance of Lamar's trial until his term of imprisonment had expired, and the affidavit in support of this application was prepared and signed by the petitioner. The petitioner was informed that his application and the affidavit in support thereof were duly presented to Judge Cushman, who presided at the conspiracy trial on the 10th of April, 1917, and the application for a postponement was denied. This result was communicated to Lamar about the 15th of April, 1917, whereupon he again conferred with his counsel at Atlanta, and was advised by them that because he was a prisoner serving a term for another offense in the same court, he could not be tried until he had served out this term of imprisonment, and that if any attempt was made to remove him to New York for trial on the date specified, the prisoner ought to resist such effort. He was advised further that the only lawful way in which he might be removed over his objection or protest for trial in New York was by virtue of removal proceedings instituted under section 1014 of the Revised Statutes (Comp. St. § 1674), and that he would receive notice of such proceedings and could resist the same. He says that he learned from officials at the prison of the intention of the government to remove him for trial at New York forcibly, and without beginning any legal proceedings in the District Court of Geor-

gia. He again consulted counsel to protect his rights, and was advised by the warden of the prison that he would not be removed in the way suggested. He was advised that the United States attorney for the District of Georgia gave assurance that no attempt at kidnapping by the officers of the executive department would be tolerated by him. He says that like assurances were given to him by the warden of the prison, and that if an effort was made to remove him in the manner threatened he would have sufficient notice to advise with his counsel and prevent such removal by legal steps.

On the evening of April 25, 1917, at about 6:45 o'clock, the petitioner says he was informed by the night warden that he should prepare to leave Atlanta for New York on a train leaving at 7:30. The petitioner says he protested against being removed from prison, and stated that he "stood upon his legal right to serve out his term of imprisonment without interruption," and he says that he was then forcibly removed from the prison and taken to New York. He was refused permission to telephone or communicate with his counsel at the depot, and it was stated by the officers in charge of him that he would not be permitted to confer by telephone, telegram, or other writing with any one. While in Washington there was an interval of several hours, where he was detained at the station, awaiting the train to proceed to New York, and there petitioner asked that he might confer with his counsel residing in Washington. This opportunity was also denied him. On arriving in the Southern district of New York the petitioner again made a similar request. He says he was denied by those in charge of his person an opportunity to communicate with any one until he was produced in the courtroom, where he says his trial was at once begun, and then a colloquy between the court and petitioner followed, and the judge presiding gave him 15 minutes in which to obtain a lawyer and prepare to participate in the proceedings then already in progress. The officer in charge of the petitioner, when he arrived in New York, was served with a writ of habeas corpus requiring the production of the prisoner for trial in the District Court, and the trial proceeded. It resulted in his conviction. This proof is not controverted by the government.

A writ of habeas corpus may be issued "when it is necessary to remove a prisoner in order to prosecute or bear testimony, in any court, or to be tried in the proper jurisdiction wherein the act was committed." Ex parte Bollman, 8 U. S. (4 Cranch) 75, 2 L. Ed. 554. And a writ of habeas corpus ad prosequendum requiring the production of a prisoner for trial is a power granted by section 262 of the Judicial Code (Comp. St. § 1239). Section 1014 of the Revised Statutes (Comp. St. § 1674) provides how offenders against the United States may be arrested and removed for trial. It provides:

"And where an offender or witness is committed in any district other than that where the offence is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."

If the petitioner was not removed to the Southern District of New York as provided by this section of the statute, he was not on the day of his trial in the Southern District of New York to answer the charge against him by due process of law. He may question whether he is unlawfully restrained of his liberty and called upon to do service for the sentence imposed on this conviction through the medium of a writ of habeas corpus. Henry v. Henkel, 235 U. S. 219, 35 Sup. Ct. 54, 59 L. Ed. 203.

In Beavers v. Henkel, 194 U. S. 73, 24 Sup. Ct. 605, 48 L. Ed. 882, the prisoner was charged with the crime in the Circuit Court of the United States for the Eastern District of New York. A warrant for his arrest was issued in that district and returned "Not found." Thereupon a complaint, supported by an affidavit, was filed in the District Court for the Southern District of New York, alleging the filing of the indictment, the issuance of the warrant, the return "Not found," and that the defendant named was within the Southern District of New York. He was arrested upon this warrant and brought before a commissioner. A hearing was had before the officer, and upon his report the District Court for the Southern District of New York signed an order of removal to the Eastern District of New York. Before this order could be executed the defendant named sued out a writ of habeas corpus. The court held that a commissioner in proceedings under section 1014 does not hold a court, and is not, in a constitutional sense, a judge. He is a mere ministerial officer, upon whom, while acting as a committing magistrate in such proceedings, is imposed the exercise of duties which are not judicial in character. The court said, by Justice Brewer (194 U. S. 83, 24 Sup. Ct. 606, 48 L. Ed. 882):

"It may be conceded that no such removal should be summarily and arbitrarily made. There are risks and burdens attending it which ought not to be needlessly cast upon any individual. These may not be serious in a removal from New York to Brooklyn, but might be if the removal was from San Francisco to New York. And statutory provisions must be interpreted in the light of all that may be done under them. We must never forget that in all controversies, civil or criminal, between the government and an individual, the latter is entitled to reasonable protection. Such seems to have been the purpose of Congress in enacting section 1014, Rev. Stat., which requires that the order of removal be issued by the judge of the district in which the defendant is arrested. In other words, the removal is made a judicial rather than a mere ministerial act."

The present case illustrates the importance of the requirement that removal proceedings under section 1014 be instituted. The petitioner claimed, as the testimony shows, that he intended to contest the right to removal and put him on trial in the Southern District of New York on a charge of conspiracy when, in point of fact, at the time he was serving a prison term on a conviction of the crime of impersonating a federal officer.

In Tinsley v. Treat, 205 U. S. 20, at page 29, 27 Sup. Ct. 430, 432 (51 L. Ed. 689), Chief Justice Fuller, speaking of section 1014, said:

"Obviously the first part of this section provides for the arrest of any offender against the United States wherever found and without reference to whether he has been indicted, but when he has been indicted in a district

in another state than the district of arrest, then, after the offender has been committed, it becomes the duty of the district judge, on inquiry, to issue a warrant of removal. And it has been repeatedly held that in such cases the judge exercises something more than a mere ministerial function, involving no judicial discretion. He must look into the indictment to ascertain whether an offense against the United States is charged, find whether there was probable cause, and determine whether the court to which the accused is sought to be removed has jurisdiction of the same."

Justice Jackson, then a circuit judge, in Re Greene (C. C.) 52 Fed. 104, 106, said:

"The liberty of the citizen, and his general right to be tried in a tribunal or forum of his domicile, imposes upon the judge the duty of considering and passing upon those questions."

When it appears from the evidence that the petitioner was removed by the authority of a telegram sent by the Attorney General to the keeper in charge of the United. States penitentiary at Atlanta, Ga., and this against the protest of the prisoner, and after he had been denied the right to consult with his counsel, who might take steps to prevent his removal, it is clear that he was denied the protection of the law which is guaranteed him by the Constitution, unless, having thus been removed to the Southern district of New York, the court had jurisdiction to try the defendant. The government contends that it did, and argues that, even if the production of the petitioner was irregular, that defect would not invalidate the conviction or be ground for release upon habeas corpus and in support of this position. Ker v. Illinois, 119 U. S. 436, 7 Sup. Ct. 225, 30 L. Ed. 421, and In re Johnson, 167 U. S. 120, 17 Sup. Ct. 735, 42 L. Ed. 103, are cited.

In the Ker v. Illinois Case, a prisoner was kidnapped in a foreign country (Peru) and brought by force against his will within the jurisdiction of the state (Illinois) whose laws he had violated, with no reference to an extradition treaty. An extradition treaty existed between Peru and the United States and no proceeding or attempt to proceed under the treaty was undertaken. The Supreme Court held, on these facts, that the treaties of extradition, to which the United States was a party, did not guarantee a fugitive from justice of one of the countries an asylum in the other, and they do not give such person any greater or more sacred right of asylum than he had before. It is pointed out that treaties make provision that for certain crimes he shall be deprived of that asylum and surrendered to justice and the treaties prescribe the mode in which this shall be done. But the court held that a trespass of a kidnapper, unauthorized by either of the governments and not professing an act under the authority of either, is not a case provided for in the treaty, and the removal is by a proceeding against him by the government whose law he violated, or by the party injured. It was further held that the question of how far such forcible transfer of the defendant so as to bring him within the jurisdiction of Illinois, where the offense was committed, could not be set up against the right to try him, and that it is within the province of the state court to decide such a defense and presented no question for the Supreme Court's review. The court said:

"The question of how far his forcible seizure in another country, and transfer by violence, force, or fraud, to this country, could be made available to resist trial in the state court, for the offense now charged upon him, is one which we do not feel called upon to decide, for in that transaction we do not see that the Constitution, or laws, or treaties, of the United States guarantee him any protection. There are authorities of the highest respectability which hold that such forcible abduction is no sufficient reason why the party should not answer when brought within the jurisdiction of the court which has the right to try him for such an offense, and presents no valid objection to his trial in such court" (citing authorities).

"What is the due process of law?" was pertinently inquired in Den, etc., v. Hoboken, etc., 59 U. S. (18 How.) at 276, 15 L. Ed. 372, where it was said:

"The Constitution contains no description of those processes which it was intended to allow or forbid. It does not even declare what principles are to be applied to ascertain whether it be due process. It is manifest that it was not left to the legislative power to enact any process which might be devised. The article is a retraint on the legislative as well as on the executive and judicial powers of the government, and cannot be so construed as to leave Congress free to make any process 'due process of law,' by its mere will. To what principles, then, are we to resort to ascertain whether this process, enacted by Congress, is due process? To this the answer must be twofold. We must examine the Constitution itself, to see whether this process be in conflict with any of its provisions. If not found to be so, we must look to those settled usages and modes of proceeding existing in the common and statute law of England, before the emigration of our ancestors, and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country."

With the statute (R. S. § 1014) which indicates the mode of removal and which has been constantly employed, and which concededly was not employed in removing the petitioner to the Southern district of New York, can it be said that he has been afforded due process of law? This protection is offered to a defendant. In Re Hans Nielsen, 131 U. S. 176, at page 182, 9 Sup. Ct. 672, 674 (33 L. Ed. 118), the court said:

"It is firmly established that if the court which renders a judgment has not jurisdiction to render it, either because the proceedings, or the law under which they are taken, are unconstitutional, or for any other reason, the judgment is void and may be questioned collaterally, and a defendant who is imprisoned under and by virtue of it may be discharged from custody on habeas corpus. This was so decided in the cases of Ex parte Lange, 18 Wall. 163, and Ex parte Siebold. 100 U. S. 371, and in several other cases referred to therein. * * * The distinction between the case of a mere error in law, and of one in which the judgment is void, is pointed out in Ex parte Siebold, 100 U. S. 371, 375, and is illustrated by the case of Ex parte Parks, as compared with the Cases of Lange and Snow. In the Case of Parks there was an alleged misconstruction of a statute. We held that to be a mere error in law, the court having jurisdiction of the case. In the Cases of Lange and Snow, there was a denial or invasion of a constitutional right."

In Mahon v. Justice, 127 U. S. 700, 714–715, 8 Sup. Ct. 1204, 1212 (32 L. Ed. 283), the defendant was indicted in Kentucky for a felony and escaped to West Virginia. While the Governor of West Virginia was considering an application from the Governor of Kentucky for his surrender as a fugitive from justice, he was forcibly abducted to Kentucky, and when there was seized by the Kentucky authorities, under legal process, and put in jail, and held to answer the indictment. In

holding that he was not entitled to his discharge from custody on a writ of habeas corpus from the Circuit Court of the United States the court said:

"So in this case it is contended that, because under the Constitution and laws of the United States a fugitive from justice from one state to another can be surrendered to the state where the crime was committed, upon proper proceedings taken, he has the right of asylum in the state to which he has fled, unless removed in conformity with such proceedings, and that this right can be enforced in the courts of the United States. But the plain answer to this contention is, that the laws of the United States do not recognize any such right of asylum, as is here claimed, on the part of a fugitive from justice in any state to which he has fled; nor have they, as already stated, made any provision for the return of parties  *  *  * abducted from a state."

These cases, however, but decided that the prisoner, who has been kidnapped or forcibly removed to the jurisdiction where he is to be tried, cannot set up the mode of his capture by way of defense if the state from which he was abducted makes no complaint. Where a prisoner is extradited from a country where an extradition treaty does exist, and is delivered up for trial, he cannot, without violating the treaty, be tried for any other crime than that for which he was delivered up. United States v. Rauscher, 119 U. S. 407, 7 Sup. Ct. 234, 30 L. Ed. 425.

The petitioner here was in the custody of the United States, making his amends to society and serving his term for impersonating an officer. It was improper practice for the government to forcibly remove the prisoner to New York and put him on trial without affording him the opportunity which the law provides—of contesting the right to removal under the removal statute.

In Ex parte Johnson, 167 U. S. 120, 17 Sup. Ct. 735, 42 L. Ed. 103, a warrant was issued by a commissioner from the Southern district of the Indian Territory to arrest the defendant (petitioner) upon a charge alleged to have been committed on July 24, 1896. On October 9, 1896, he was indicted, and on October 17 was arraigned, tried, and convicted, and sentenced to death. On July 25, following the commission of the offense, a warrant issued by a commissioner for the Eastern district of Texas, charging him with the same crime, was placed in the hands of the marshal for that district. He demanded of the marshal of the Southern district of the Indian Territory the surrender of the defendant in obedience to the writ, and this was refused. At the time of the commission of the offense there was no term of the United States Court for the Eastern District of Texas until the following November, and this was after the trial, conviction, and sentence of death. The court held that, if the defendant was actually in the custody of the marshal on September 1, the subsequent indictment and trial was valid, although he might have been illegally arrested in the first instance. It was held that a court having possession of a person or property cannot be deprived of the right to deal with such property or person until its jurisdiction is exhausted, and that no other court has a right to interfere with such custody and possession. The court said:

"Although it has been frequently held that if a defendant in a civil case be brought within the process of the court by a trick or device, the service will

be set aside and he will be discharged from custody. Union Sugar Refinery v. Mathiessen, 2 Cliff. 304; Wells v. Gurney, 8 B. & C. 769; Snelling v. Watrous, 2 Paige. 314; Williams v. Bacon, 10 Wend. 636; Metcalf v. Clark, 41 Barb. 45; Stein v. Valgenburg, 3 B. & E. 65; Williams v. Reed, 5 Dutcher, 385; Carpenter v. Spooner, 2 Sand. 917; Pfiffner v. Krapfell, 28 Iowa, 27; Moynahan v. Wilson, 2 Flippen, 130; Small v. Montgomery, 17 Fed. 865; Kauffman v. Kennedy, 25 Fed. 785. The law will not permit a person to be kidnapped or decoyed within the jurisdiction for the purpose of being compelled to answer to a mere private claim, but in criminal cases the interests of the public override that which is, after all, a mere privilege from arrest."

In Pettibone v. Nichols, 203 U. S. 192, 213, 27 Sup. Ct. 111, 118 (51 L. Ed. 148), the Supreme Court, in stating what the decision of the court was in Ker v. Illinois and Mahon v. Justice, said:

"'(1) That this court will not interfere to relieve persons who have been arrested and taken by violence from the territory of one state to that of another, where they are held under process legally issued from the courts of the latter state. (2) That the question of the applicability of this doctrine to a particular case is as much within the province of a state court, as a question of common law or of the law of nations, as it is of the courts of the United States.' In Lascelles v. Georgia, 148 U. S. 537, 543, that it was settled in the Ker and Mahon Cases that 'except in the case of a fugitive surrendered by a foreign government, there is nothing in the Constitution, treaties or laws of the United States which exempts an offender, brought before the courts of a state for an offense against its laws, from trial and punishment, even though brought from another state by unlawful violence, or by abuse of legal process.' And in Adams v. New York, 192 U. S. 585, 596 (the same cases being referred to), that 'if a person is brought within the jurisdiction of one state from another, or from a foreign country, by the unlawful use of force, which would render the officer liable to a civil action or in a criminal proceeding because of the forcible abduction, such fact would not prevent the trial of the person thus abducted in the state wherein he had committed an offense.' See, also, in re Johnson. 167 U. S. 120, 127, in which the court recognized the principle that when a party in a civil suit has, by some trick or device, been brought within the jurisdiction of a court, he may have the process served upon him set aside, but that a different rule prevails in criminal cases involving the public interests."

It is urged by the United States attorney that it has been adjudicated by affirmance by the Circuit Court of Appeals that the court had jurisdiction of the person of the petitioner and of the crime. But on a writ of habeas corpus the inquiry is addressed, not to errors, but to the question of whether the proceedings and judgment rendered therein are for any reason void, and, unless it is affirmatively shown that the conviction under which the petitioner is found is void, he is not entitled to his discharge. United States v. Pridgeon, 153 U. S. 48, 14 Sup. Ct. 746, 38 L. Ed. 631.

Even though the government failed to institute removal proceedings, but did bring the petitioner to New York for trial by mere direction of the attorney general to the warden, still, he having come within the jurisdiction of the court under the rule in the above authoritative decisions of the Supreme Court, the government could, as it did, serve the officer in charge of the person of the prisoner with a writ of habeas corpus ad prosequendum to prosecute and place him on trial. This ancient writ has long been known to the English for removing prisoners from one court to another for the more easy administration of justice. 3 Blackstone, 129. 139.

[3] The petitioner contends that he could not be placed on trial on the charge of conspiracy during the period that he was undergoing sentence for the crime of impersonating an officer. The right to try a prisoner under such circumstances is controlled in many of the state jurisdictions by statute. Sections 298-a, 298-b, N. Y. Code Cr. Proc.

In the absence of statutes, the highest courts of some states have ruled that the trial for the second offense may not be had during the period of servitude for the first offense. State v. Buck, 120 Mo. 479, 25 S. W. 573; State v. Connell, 49 Mo. 282; In re Breton, 93 Me. 39, 44 Atl. 125, 74 Am. St. Rep. 335; Ex parte Morton, 132 Cal. 346, 64 Pac. 469. The Missouri cases were cited with approval by Circuit Judge Thayer (In re Jennings [C. C.] 118 Fed. 479), where he said:

"The law contemplates that after a prisoner has been tried and sentenced, he will be committed at once to the custody of the prison officials where the sentence is to be executed. He passes by virtue of the sentence into a custody different from that of the court before which he was convicted. This doctrine is enforced so rigidly in some jurisdictions, and possibly in all, that, after a sentence for a crime has been pronounced, the prisoner cannot be arraigned and tried for another offense, even in the same court by which he was sentenced, until the sentence is reversed by a higher tribunal, or he has served out his term of imprisonment."

By common law cumulative fines and terms of imprisonment, if definite and certain, are valid, where the accused is convicted of separate and distinct crimes in different indictments or in different counts of the same indictment. Morgan v. Devine, 237 U. S. 632, 35 Sup. Ct. 712, 59 L. Ed. 1153; Hyde v. United States, 198 Fed. 610, 119 C. C. A. 493. And where a convict in serving a term of imprisonment under a prior sentence at the time of a second conviction, sentence may be announced to begin at the expiration of the term he is serving. United States v. Farrell, 25 Fed. Cas. 1051, No. 15,074; Rigor v. State, 101 Md. 465, 61 Atl. 631, 4 Ann. Cas. 719. To hold otherwise would excuse a defendant who is serving a life term of imprisonment from trial and execution if guilty of the crime of murder in the first degree. For authorities holding that a prisoner who commits a crime during the unexpired term of imprisonment may be tried and punished therefor and sentenced to a term of imprisonment at the expiration of his present term, see Thomas v. People, 67 N. Y. 218; State v. Finch, 75 Kan. 582, 89 Pac. 922, 20 L. R. A. (N. S.) 273; People v. Huntley, 112 Mich. 569, 71 N. W. 178; Harrington v. Bader, 32 Ohio Cir. Ct. R. 493; Kennedy v. Howard, 74 Ind. 87; Perry v. State, 110 Ga. 234, 36 S. E. 781; Singleton v. State, 71 Miss. 782, 16 South. 295, 42 Am. St. Rep. 488; State v. Johnson, 93 Mo. 73, 5 S. W. 699; Ex parte Ryan, 10 Nev. 261.

Whatever may be the merits of this contention, it has been, inferentially at least, adjudicated adverse to the petitioner on the appeal to the Circuit Court of Appeals. Upon examination of the brief as submitted to that court, I find that the question was argued, and by its decision the Circuit Court of Appeals has decided adverse to the petitioner's contention. The question of the right to try the petitioner while he was serving his present sentence under the first conviction

was raised by his motion for a continuance of the case until after the expiration of his term, when he was brought to the bar of justice on the charge of conspiracy. If it was wrong to require him to go to trial, or if it was error to refuse his request for a continuance, such error is one that must be presented to an appellate court by a writ of error. Dowell v. Applegate, 152 U. S. 327, 14 Sup. Ct. 611, 38 L. Ed. 463. There is no federal statute or case for guidance, nor does either counsel call my attention to any other controlling authority. I do not find that the question has heretofore been presented to the Supreme Court or any of the Circuit Courts of Appeals.

There is no logical reason why a criminal, deprived of his liberty, should not be placed on trial a second time. His opportunity of offering defense to the second charge while serving a term for the first offense is as good as if he were committed without bail to imprisonment. The fact that he is serving his term on a conviction is no greater handicap to his defense than the opportunity which is offered in many, if not all, jurisdictions of proving his former conviction. He may have counsel and opportunity to secure his witnesses to offer proof as to his defense, although perhaps handicapped by his incarceration. To hold otherwise would invoke a rule of law which would frustrate the administration of justice, as, for example, where a prisoner while in jail, commits a homicide or breaks jail. If, upon apprehension in either case, he may not be tried for the offense thus committed until he has served possibly a long term for the first offense, witnesses may die and the administration of justice would be defeated. I think that the court could try the petitioner and that it had jurisdiction so to do.

[4] The petitioner contends that the prosecution was ended by the implied repeal of so much of the Sherman Act as applied to foreign commerce during the pendency of the writ of error. On April 10, 1918, Congress passed the Webb Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 8836¼a–8836¼e); sections 2 and 3 (sections 8836¼b, 8836¼c) whereof provided as follows:

"Sec. 2. That nothing contained in the act entitled 'An act to protect trade and commerce against unlawful restraints and monopolies,' approved July second, eighteen hundred and ninety [Sherman Act], shall be construed as declaring to be illegal an association entered into for the sole purpose of engaging in export trade and actually engaged solely in such export trade, or an agreement made or act done in the course of export trade by such association: Provided such association, agreement, or act is not in restraint of trade within the United States, and is not in restraint of the export trade of any domestic competitor of such association: And provided further, that such association does not, either in the United States or elsewhere, enter into any agreement, understanding or conspiracy or do any act which artificially or intentionally enhances or depresses prices within the United States of commodities of the class exported by such association, or which substantially lessens competition within the United States or otherwise restrains trade therein.

"Sec. 3. That nothing contained in section seven of the act entitled 'An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes,' approved October fifteenth, nineteen hundred and fourteen [Clayton Act], shall be construed to forbid the acquisition or ownership by any corporation of the whole or any part of the stock or other capital of any corporation organized solely for the purpose of engaging in export trade, and actually engaged solely in such export trade, unless the effect of

such acquisition or ownership may be to restrain trade or substantially lessen competition within the United States."

It is contended that in the absence of a saving clause, pending prosecutions for violations of so much of the Sherman Act as made it unlawful to restrain or monopolize foreign commerce were ended by reason of this act. But the prosecution under the Sherman Act was not brought to an end by the repeal contained in the Webb Act. By section 13 of the Revised Statutes (Comp. St. § 14), even in the absence of a special saving clause in the repealing act, all penalties previously incurred under the act repealed are saved. It provides the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred. Under the statute (R. S. § 13), unless the repealing act shall so expressly provide, the particular law shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty and forfeiture or liability. Therefore this statute saved this prosecution, even though by the Webb Act the Sherman Law has been repealed, in so far as it applies to foreign commerce. Great No. Ry. v. United States, 208 U. S. 452, 28 Sup. Ct. 313, 52 L. Ed. 567.

[5] After conviction on the conspiracy charge, the petitioner was returned to the Atlanta penitentiary, where he served out the balance of his term under the conviction for impersonating a federal officer. It is contended by him that, while so doing, he served the term which was imposed upon him on the conviction of the conspiracy charge. The argument is that the term of one year as his sentence on the conspiracy charge ran concurrently with the term imposed on the charge of the crime for impersonating a federal officer. There are two records which disclose what took place at the time sentence was imposed: First, the criminal minutes kept by the clerk in his minute book and the commitment paper which issued and upon which the prisoner was incarcerated. The criminal minutes kept by the clerk provide a memorial for the future record for the court of what took place at the time of sentence. The commitment serves another purpose. The purpose and object of this record is, first, to record accurately the judge's terms of the sentence; second, to advise the prisoner what penalty is imposed so that he might make amends to society accordingly; and, third, to advise the jailor so that he might keep the prisoner and require the fulfillment of the sentence so imposed. The minutes produced read as follows:

"On motion of United States attorney ordered sentenced. The court thereupon proceeds to pass judgment and sentence the defendant. Franz Rintelen sentenced to be imprisoned for one year. Mercer county jail or such other place as the Attorney General of the United States sees fit to designate. Bail fixed in sum of $25,000 pending appeal. David Lamar to be imprisoned in the Mercer county jail for a period of one year. That the commencement of this term of service begin at the expiration of your present sentence at the federal prison at Atlanta, Georgia. You are now remanded to the custody of the warden of the penitentiary at Atlanta, Georgia, until your term of imprisonment there has expired and that at the end of that term of imprisonment and service you be surrendered to the United States marshal for the Southern district of New York and he will then under this judgment transport you to the Mercer county jail and you will there be imprisoned for the period of one

year. Henry B. Martin sentenced to be imprisoned for one year, sentence to be executed in Mercer county jail, Trenton, N. J. Ordered that the term of court be and hereby is extended for a term of two years."

The commitment reads as follows:

"On motion of the United States attorney, ordered sentence. The court thereupon proceeds to pass judgment and sentence the prisoner David Lamar to be imprisoned for a term of one year. Sentence to be executed at the Mercer county jail, Trenton, N. J. An extract from the minutes. [Seal] Alex. Gilchrist, Jr., Clerk."

Beneath the signature of the clerk there is found the following:

"Bail fixed in the sum of $10,000 pending appeal. Execution of sentence under this indictment to commence at expiration of sentence of two years imposed by Judge C. W. Sessions on December 3, 1914, and to be executed at the U. S. Penitentiary, Atlanta, Ga. A true copy: Alex. Gilchrist, Jr., Clerk."

Mr. Leary, the clerk who made this entry upon the commitment paper, testified that he made such entry after the sentence was imposed. He could not testify to a positive recollection that, when Judge Cushman imposed sentence, he stated that the execution of the sentence was to commence at the expiration of the sentence of two years imposed by Judge Sessions on December 3, 1914. It is clear, however, that Judge Cushman intended that the execution of the sentence here be at the Mercer county jail in Trenton, N. J., and not at the United States penitentiary at Atlanta. It is argued that it was within the power of the Attorney General to change the prisoner from one United States penitentiary to another and thus lawfully permit him to carry out his sentence. It will be remembered that the crime was committed while he was released on bail pending the hearing on the writ of error from the conviction of the charge of impersonating a federal officer. The criminal minutes kept by the clerk are not part of the judgment. The judgment consists of an extract from the minutes made out by the clerk, which is called the commitment paper, and which has the effect of a judgment. This is conceded by the government. The record called "criminal minutes" kept by the clerk would be of aid for reference if an application were made to amend the judgment. The minutes of the clerk cannot in any sense be considered as a judgment or sentence. There is no federal statute that I have been able to find controlling the procedure as to the method or form of judgment required to be entered in a criminal case, and the rule of common-law procedure accordingly must prevail.

In Tucker v. United States, 196 Fed. 260, 116 C. C. A. 62, in considering the plea of nolo contendere, it was said:

"Both propositions rest on the common-law definitions of this plea of 'nolo contendere,' and it is unquestionable that the common-law rule must govern, in the absence of any federal statute providing therefor; and the questions thus raised, by way of challenging the judgment, are plainly involved for decision in the case at bar. * * * So the answer to either of the contentions must be derived from definitions of the plea in the common-law authorities."

The deputy clerk of the District Court testified at the hearing that no judgment roll has ever been made up in the case at bar against the petitioner, and that it was not the practice of the clerk so to do. He

did testify that the commitment above referred to constituted the sentence and the authority of the jailer to imprison the petitioner.

In Crain v. United States, 162 U. S. 625 (p. 643), 16 Sup. Ct. 952, 958 (40 L. Ed. 1097) the court said:

"The record should be a permanent memorial of what was the issue tried, and show whether the judgment, whereby it was proposed to take the life of the accused or to deprive him of his liberty, was in accordance with the law of the land. In Hopt v. Utah, 110 U. S. 574, 579, this court, observing that the public has an interest in the life and liberty of an accused person, said: 'Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods.' * * * Neither sound reason nor public policy justifies any departure from settled principles applicable in criminal prosecutions for infamous crimes. Even if there were a wide divergence among the authorities upon this subject, safety lies in adhering to established modes of procedure devised for the security of life and liberty. Nor ought the courts, in their abhorrence of crime nor because of their anxiety to enforce the law against criminals, to countenance the careless manner in which the records of cases involving the life or liberty of an accused are often prepared."

It has been held that a bill of exceptions will not take the place of a judgment and is not a part of a record of a judgment to which a court may look in a proceeding where the judgment is collaterally attacked. Corrections of the ruling of a reviewing court can never be considered in habeas corpus to test the validity of a judgment. In re Haskell (C. C.) 52 Fed. 795. The commitment paper must be treated as a judgment, and from it must be obtained the intention of the judge as to what he intended to impose as the sentence upon the petitioner. The "criminal minutes" of the clerk record all that is written below the clerk's name, "Alex. Gilchrist, Jr.," and after the record made by the deputy clerk, Mr. Leary, is found "a true copy." This must be considered a part of the sentence as imposed by the trial judge. Therefore I conclude the sentence on the conspiracy charge did not run concurrently with the impersonation charge.

[6] It is urged that Judge Cushman had no power to impose a cumulative sentence. That this is what was imposed, if the sentence under the conspiracy charge was not to commence at once, but was suspended until the petitioner had served his term under the charge of impersonating a federal officer. The case at bar, however, is not one where several crimes are charged in one indictment, or where several indictments have been consolidated for the purpose of the trial. In such cases the rule is that there can be but one judgment, and when that judgment is imposed it must in terms specify the order in which the terms of imprisonment are to commence and terminate. In such a case the judgment must be certain and definite. It required the identification of the various convictions. United States v. Patterson (C. C.) 29 Fed. 775 (Justice Bradley). Thus it is held that it is not necessary to enter separate judgments for several offenses charged regarding several separate convictions upon distinct indictments. Freeman v. United States, 227 Fed. 732, 142 C. C A. 256.

"Under the present statute three separate offenses, committed in the same six months, may be joined, but not more, and when joined there is to be a

single sentence for all." In re Henry, 123 U. S. 372, 8 Sup. Ct. 142, 31 L. Ed. 174.

It has been held that a prisoner may not be sentenced for more than one offense, unless the different convictions were had at the same term, and both were obtained previous to the sentence. In other words, that there is no authority for convicting a prisoner of felony at one term of the court and regularly passing sentence upon him and then remanding him to jail until the next succeeding term and again convicting and sentencing him for another felony. Ex parte Meyers, 44 Mo. 279. This rule prevails in California. Ex parte Morton, 132 Cal. 346, 64 Pac. 469.

In the absence of some clear expression by the court the day on which the prisoner is sentenced is presumed to be the day that he commences his term of imprisonment, unless he be released on bail. In United States v. Patterson (C. C.) 29 Fed. 775, 776, Supreme Court Justice Bradley, sitting in chambers, issued a writ of habeas corpus, and there was presented the question as to whether the petitioner under the following sentence had served his term after having been imprisoned for five years. The judgment read:

"The court do order and adjudge that the prisoner, Oscar L. Baldwin, be confined at hard labor in the state's prison of the state of New Jersey for the term of five (5) years upon each of the three indictments above named, said terms not to run concurrently, and from and after the expiration of said terms until the costs of this prosecution shall have been paid."

In holding that the terms did run concurrently the court said:

"If this were a mere error, it could not be considered on habeas corpus. The judgments of the District and Circuit Courts in criminal cases are final, and cannot be reviewed by writ of error, and a mere error of law, if in fact committed, is irremediable; as much so as are the decisions of the Supreme Court. But if a judgment or any part thereof is void, either because the court that renders it is not competent to do so for want of jurisdiction, or because it is rendered under a law clearly unconstitutional, or because it is senseless and without meaning, and cannot be corrected, or for any other cause, then a party imprisoned by virtue of such void judgment may be discharged on habeas corpus. I do not say that the judgment in this case is void. It is a good judgment for the term of five years' imprisonment on each indictment. Perhaps these terms might have been lawfully made to take effect successively, if the order of their succession had been specified, although there is no United States statute authorizing it to be done. But this was not done. No distinction was made between them in this respect, and, as neither of them was made to take effect after the one or the others, they all took effect alike; that is, from the time of the rendering of judgment. The additional words as to nonconcurrence are void, because they are incapable of application. It is as if a man should be sentenced to successive terms of imprisonment on each of several indictments, and to hard labor, or to be kept on bread and water, during one of the terms, without specifying which. The latter part of such a sentence would clearly be void, for it could not be allowed to the jailer to exercise his discretion as to the application of the aggravated penalties. If there were any way in which the District Court could amend its judgment, the case might perhaps be different. But I see no way in which it could do so without passing a new sentence, and that it could not do now, after the term has passed, and after one term of imprisonment has been suffered. What right would the court have now to determine that the expired term was due to any particular indictment more than to either of the others?"

To like effect, holding that where the defendant is already in execution of a former sentence and where the second sentence does not state that the term is to begin at the expiration of the former, the second will run concurrently with the first in the absence of a statute providing a different rule: Ex parte Gafford, 25 Nev. 101, 57 Pac. 484, 83 Am. St. Rep. 568; Dickerson v. Perkins, 182 Iowa, 871, 166 N. W. 293, 5 A. L. R. 374; Ex parte Green, 86 Cal. 427, 25 Pac. 21; In re Breton, 93 Me. 39, 44 Atl. 125, 74 Am. St. Rep. 335; In re Black, 162 N. C. 457, 78 S. E. 273; Kirkman v. McClaughry (C. C.) 152 Fed. 255.

The importance of accuracy in the statement of the terms of the sentence is a right which is accorded every defendant. It is of importance to the prisoner that the sentence should be definite and certain, so as to advise him and the officer charged with its execution of the time of its commencement and termination, without being required to inspect the records of the court or records of another case. If it is vague and indefinite, the terms will run concurrently. A sentence to confinement to take effect in the future cannot be sustained, unless it is certain and definite, and not subject to undefined or uncertain contingencies. Indefiniteness and uncertainty leaves the defendant in a position where he can claim that he has served his sentence. It places him in the position where, if it is held that the sentences run concurrently, he may be held to have served but one of the two sentences imposed. A prisoner, while suffering the penalty of the law, should always have preserved to him whatever remains of his rights and condition. A sentence should be so complete as to need no construction of a court to ascertain its import. It should be so complete that to ascertain its meaning it will not be necessary to supplement the written words by either a nonjudicial or ministerial officer. He must find what the sentencing judge intended from the language which he used. The rascality of the petitioner, or the merits or demerits of his case, or the appropriate punishment which has been inflicted, cannot enter into this determination. The punishment which the worst criminal has inflicted upon him must be legal, and when this is not so, however unintentional, an offense is being committed in the name of the law against the person. Society does not wish to have it imposed; for, if this may be done against a man guilty of one crime, it can be done against another, and no one can say whose turn will come next.

Is the sentence which was imposed by Judge Cushman definite and certain? Is it such as a defendant may readily understand and be capable of performing? I think all that is found in the commitment paper must be read and applied. Servitude in the United States penitentiary at Atlanta did not answer the requirement to serve one year in Mercer county jail in New Jersey. The petitioner could not serve the term fixed for Mercer county jail until after he finished his term at Atlanta, Ga. The criminal minutes bear out the indorsement at the bottom of the commitment paper. It is there clearly expressed that the judge fixed the commencement of service after the expiration of Lamar's term at Atlanta. No authority supports the claim that Judge Cushman was prohibited from fixing the date of the commencement of

this term to such future date. To hold otherwise would be making a mockery of the law, and to stultify the course of justice.

The claim that the petitioner was not given opportunity to be represented fully by counsel in the Circuit Court of Appeals is not borne out by the facts. He submitted a brief of 81 pages, urging many points, all of which was duly considered by that court. It is true he argued the case in person, but he was accorded at least two continuances of his argument to employ counsel, and the time allotted was ample for counsel to prepare for the argument of the appeal. Under the circumstances, I cannot sustain the writ.

Writ dismissed; prisoner remanded.