## Ex parte AUBERT.
### No. 20627.

District Court, N. D. California, S. D.
June 25, 1931.

Thos. J. Riordan, of San Francisco, Cal., for petitioner.

Geo. J. Hatfield, U. S. Atty., of San Francisco, Cal., for respondent.

ST. SURE, District Judge.

Petition for writ of habeas corpus.

On September 19, 1929, the petitioner, then incarcerated in the state penitentiary at San Quentin upon a commitment issued out of a state court, was brought before this court upon a writ of habeas corpus ad prosequendum, and tried and convicted by a jury of violating section 37, Cr. Code U. S. (18 USCA § 88), whereupon this court sentenced him: "To be imprisoned for a period of two years in a United States penitentiary and pay a fine in the sum of $1000." The petitioner was immediately thereafter, in compliance with said writ, returned to the state penitentiary to serve the remainder of his sentence under the commitment theretofore issued by the state court. He was released from the state penitentiary on the 21st day of May, 1931, after having served said sentence. He was then taken into custody by the United States marshal under the commitment from this court dated September 19, 1929, "enroute

to the Federal penitentiary at McNeil Island." On May 28, 1931, while still in the custody of the marshal en route to the penitentiary, application was made for a writ of habeas corpus.

The petitioner contends that the sentence of the United States District Court of September 19, 1929, ran concurrently with the sentence of the state court to the penitentiary at San Quentin; that, after deducting "good behavior allowance," the two-year sentence of the federal court was completely served on May 23, 1931, and hence the petitioner was and is entitled to his liberty, and is being illegally restrained since that date.

Petitioner cites U. S. v. Daugherty, 269 U. S. 360, 46 S. Ct. 156, 70 L. Ed. 309; Boyd v. Archer, 42 F.(2d) 43, 70 A. L. R. 1507 (9 C. C. A.); Ponzi v. Fessenden, 258 U. S. 254, 42 S. Ct. 309, 310, 66 L. Ed. 607, 22 A. L. R. 879; and Ex parte Lamar (C. C. A.) 274 F. 160.

The Daugherty Case is authority for the rule that sentences (page 362 of 269 U. S., 46 S. Ct. 156) "run concurrently, in the absence of specific and definite provision therein that they be made to run consecutively by specifying the order of sequence"; and (page 363 of 269 U. S., 46 S. Ct. 156) "sentences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehensions by those who must execute them. The elimination of every possible doubt cannot be demanded."

Boyd v. Archer, supra, cites the rule above quoted in determining whether sentences on two different convictions are to run consecutively or concurrently, holding that the question is of the intent of the court.

Paraphrasing the holding quoted from the Daugherty Case, supra, surely the sentence of this court revealed with fair certainty that petitioner should serve the sentence in a federal penitentiary, and not in a state penitentiary. Had this court intended that the sentence imposed should run concurrently with that of the state court, it would have said so and suspended same. Furthermore, the United States marshal, whose duty it was to execute the federal commitment, immediately upon the expiration of the state sentence took the petitioner into custody under the commitment from this court and held him "enroute to the Federal penitentiary at McNeil Island," showing there was no misapprehension on his part as to his duty in the premises. Imposition by this court of the sentence to run concurrently would have raised serious misapprehensions in the minds of those whose duty it was to execute the sentence, and might also have interfered with any possible pardon or parole on the state conviction.

In the case of Ponzi v. Fessenden, supra, Ponzi, while serving sentence under a federal commitment, was taken before a state court on a writ of habeas corpus, with the consent of the Attorney General of the United States, and tried and convicted of a state law violation. Upon petition for a writ of habeas corpus, it was contended that the United States had exclusive jurisdiction and custody of Ponzi, and hence the state court had no jurisdiction to thus try him while in federal custody. Chief Justice Taft discussed at great length the respective jurisdictions and the two sovereignties, and used the following language:

"One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. In re Andrews (D. C.) 236 F. 300; United States v. Marrin (D. C.) 227 F. 314. Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it. * * *

"The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose. * * *

"In the case at bar, the federal District Court first took custody of Ponzi. He pleaded guilty, was sentenced to imprisonment and was detained under United States authority to suffer the punishment imposed. Until the end of his term and his discharge, no state court could assume control of his body without the consent of the United States."

█ Here an analogous situation is presented. The petitioner was in the absolute cus-

tody and control of the state under commitment from the state court, and the state was entitled "to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose." Out of the spirit of comity the sovereign state of California waived its strict right to exclusive custody of petitioner for trial in this court for violation of federal laws. The federal court secured custody with permission of the sovereign state for the limited purpose of trial. Until the end of his term and his discharge under the state commitment, this court could not assume control of petitioner's body without the consent of the state.

Ex parte Lamar, supra, holds that, if the sentence is vague and indefinite, the term will run concurrently. The sentence of petitioner by this court was "to be imprisoned for the period of two years in a United States Penitentiary," etc. Petitioner contends this sentence is satisfied by serving a similar period in the state penitentiary. In Ex parte Lamar the court says at page 176 of 274 F.: "Servitude in the United States penitentiary at Atlanta did not answer the requirement to serve one year in Mercer county jail in New Jersey. The petitioner could not serve the term fixed for Mercer county jail until after he finished his term at Atlanta, Ga."

Applying this language to petitioner's case, it may be said that servitude in the state penitentiary did not answer the requirement to serve the sentence in a federal penitentiary imposed by this court.

None of the cases relied upon by the petitioner consider the question of sentences running concurrently when one sentence is imposed by the federal court and one by a state court, which is the situation in the instant case. Such a situation, however, was presented in Ex parte McCullen (D. C.) 29 F.(2d) 852, where a similar application was denied. In its opinion the court said at page 853: "As has repeatedly been held, the time when a sentence of imprisonment shall commence is properly no part of the sentence, and may be changed by the court at a subsequent term, if, for any reason, execution of the sentence has been delayed. Bernstein v. United States (C. C. A.) 254 F. 967, 3 A. L. R. 1569. This court had the power, when its attention was called to the fact that the petitioner was serving a sentence under a state court judgment for an entirely different offense at the time it directed a remittitur to issue, to vacate any order theretofore entered in respect to such issuance, and to direct that a remittitur issue to take effect on the expiration of the state judgment, as was done in this case."

In Bernstein v. United States, 254 F. 967, 3 A. L. R. 1569 (4 C. C. A.), Bernstein had been sentenced by a federal court to the penitentiary at Atlanta, Ga., for a period of eighteen months from date thereof. He was released on bail pending appeal, and conviction was affirmed several months thereafter. (C. C. A.) 238 F. 923. While released on bail, he was convicted in a District Court in another district, and sentenced to serve a term which did not expire until two years after the date when he was sentenced to Atlanta penitentiary for eighteen months. Upon being released under the second sentence, he was taken into custody by the marshal under the eighteen-month commitment, and sought release on a writ of habeas corpus, claiming that the eighteen-month sentence, having been directed to begin upon date thereof, had run concurrently with the sentence subsequently given in the second case, and was entirely served. The court denied the petition for a writ of habeas corpus, and thereupon resentenced Bernstein to be imprisoned in a penitentiary at Atlanta for eighteen months, from which an appeal was taken. The Circuit Court, in affirming this order, used the following language (254 F. 967, 968, 3 A. L. R. 1569):

"But it has been repeatedly held that the naming of a date when the sentence shall be executed, or the period of imprisonment begin, is not a part of the sentence proper, and therefore such date may be changed after the term expires. In a legal sense, the sentence is the punishment fixed for the offense of which the accused has been convicted, and any order respecting the time of its infliction is but the award of execution or a direction to the clerk for framing the mittimus. Such an order or direction is said to be, not a judicial, but merely a ministerial, act, to which the rule invoked by appellant does not apply. * * *

"It follows from these decisions, with which we are in accord, that the court below had full power to make the order of April 8, 1918, which requires appellant to serve the sentence imposed upon him 2 years before. Although the order so recites, we think it inaccurate to say that he was 'resentenced,' since the court made no change in the original sentence, but merely changed the previous direction as to the time when imprisonment should begin. When the order is so con-

sidered, as properly it should be, the other contentions of appellant are made to disappear." Certiorari denied 249 U. S. 604, 39 S. Ct. 260, 63 L. Ed. 798.

The petition will be denied and an order made by this court directing that the sentence of imprisonment entered on September 19, 1929, shall begin to run upon the date of the expiration of the sentence under the state commitment.