**LUNSFORD v. HUDSPETH, Warden.**

**No. 2420.**

Circuit Court of Appeals, Tenth Circuit.

March 3, 1942.

HUXMAN, Circuit Judge, dissenting.

Wayne Coulson, of Wichita, Kan., for appellant.

Summerfield S. Alexander, U. S. Atty., and Homer Davis, Asst. U. S. Atty., both of Topeka, Kan., for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

On February 5, 1939, and while the petitioner was in custody of the Warden of the Oklahoma State Penitentiary serving a sentence for which he had been convicted in the courts of Oklahoma, he was delivered to the United States Marshal for the Northern District of Oklahoma, in obedience to a writ of habeas corpus ad prosequendum issued by the District Court of the Northern District of Oklahoma for trial on an indictment returned against him in that District on January 19, 1939.

The writ of habeas corpus ad prosequendum directed to the Warden of the state penitentiary commanded the Warden to deliver petitioner "now held in your custody and under your control, to the United States Marshal in and for the Northern District of Oklahoma, which said Marshal shall bring the bodies of the said Babe Susie and Vester Lunsford before the United States District Court for the Northern District of Oklahoma, at Tulsa, Oklahoma, on the 8th day of February, 1939, then and there to be tried as the defendants in a certain case wherein the United States of America is plaintiff and Babe Susie and Vester Lunsford are defendants and to hold said Babe Susie and Vester Lunsford subject to the further order of this court, and said Marshal shall then and there make return of his actions and doings on said writ as provided by law."

On February 9, 1939, the petitioner was tried and convicted on both counts of the indictment, charging violation of 18 U.S.C.A. § 88, and violation of 18 U.S.C.A. § 99, and sentenced to a term of three years on each count to run concurrently. The pertinent part of the judgment follows: "It is by the court ordered and adjudged that the defendant, having been found guilty of said offenses, is hereby committed to the custody of the Attorney General for imprisonment in an institution of the penitentiary type to be designated by the Attorney General or his authorized representative, for a period of * * *. It is further ordered that the Clerk deliver a certified copy of this judgment and commitment to the United States Marshal or other quali-fied officer and that the same shall serve as the commitment herein."

The return on the writ of habeas corpus ad prosequendum follows: "I received this writ at Tulsa, Oklahoma, on February 5, 1939, and on same date I transported the within named, Vester Lunsford from the State Penitentiary at McAlester, Oklahoma to Tulsa, Oklahoma for the purpose set forth herein, and after sentence was imposed in the District Court of the United States, I returned the said Vester Lunsford into the custody of the Warden of the Oklahoma State Penitentiary at McAlester, Oklahoma, on February 15, 1939, as within commanded."

When the petitioner was released from the Oklahoma State Penitentiary on November 2, 1940, after serving his sentence there, he was taken into custody by the United States Marshal on the commitment issued by the United States District Court on February 9, 1939, and delivered into the custody of the Warden of the Federal Penitentiary at Leavenworth, Kansas, on the same date.

The question presented for decision is whether the petitioner commenced the service of the sentence on February 9, 1939, the date on which it was imposed by the Federal Court, as he contends; or whether the service of the sentence commenced on November 2, 1940, the date on which he was surrendered by the state authorities to the United States Marshal and delivered to the custody of the Warden of the United States Penitentiary, as the Government contends, and as the trial court held. Concededly, if the sentence commenced to run on February 9, 1939, when it was imposed, the writ should issue. If the contention of the Government is correct, the writ should be denied.

The petitioner argues in effect, that the judgment of the United States District Court committed petitioner to the custody of the Attorney General on February 9, 1939, for imprisonment in an institution of the penitentiary type, to be designated by the Attorney General or his authorized representatives. That it was the duty of the United States Marshal to forthwith execute this judgment; that he had no authority to return him to the custody and control of the Warden of the Oklahoma State Penitentiary, and hence he has been in the constructive custody of the Attorney General since February 9, 1939.

Embedded in the question presented is an interplay between state and federal sovereignties in the exercise of the power of each to enforce and vindicate its laws. Out of the exercise of this power has evolved the now axiomatic rule of law that a sovereignty, or its courts, having possession of a person or property cannot be deprived of the right to deal with such person or property until its jurisdiction and remedy is exhausted and no other sovereignty, or its courts, has the right or power to interfere with such custody or possession. Ponzi v. Fessenden, 258 U.S. 254, 42 S. Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879; Ex parte Johnson, Petitioner, 167 U.S. 120, 17 S.Ct. 735, 42 L.Ed. 103; Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390. It is equally well settled that unless founded upon some matter justifying the exercise of federal authority necessary to enforcement of rights and immunities granted by the constitution, laws and treaties of the United States, no court, or judge thereof, can issue a writ of habeas corpus to bring up a prisoner who is in custody under a sentence or execution of a State court for any other reason than to be used as a witness in the trial of a cause. Ex parte Burrus, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500; Ex parte Dorr, 3 How. 103 11 L.Ed. 514; Ex parte Johnson, supra; Ex parte Burrus, supra, and In re Neagle, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55. See, also, Velazquez v. People of Puerto Rico, 1 Cir., 77 F.2d 431.

As an easy and flexible means of administering justice and of affording each sovereignty the right and opportunity to exhaust its remedy for wrongs committed against it, there has evolved the now well established rule of comity which is reciprocal, whereby one sovereignty having exclusive jurisdiction of a person may temporarily waive its right to the exclusive jurisdiction of such person for purposes of trial in the courts of another sovereignty. Thus the offender is accorded a speedy trial and the administration of justice is expedited by the availability of evidence, which might through lapse of time be lost, but such a waiver is a matter addressed solely to the discretion of the sovereignty, or its representatives having power to grant it. Ponzi v. Fessenden, supra, and Ex parte Aubert, D.C., 51 F.2d 136. The privileges granted by this flexible rule of comity should and must be respected by the sovereignty to which it is made available,

and this respectful duty is reciprocal, whether federal or state, because neither sovereignty has the power to override it. Under the free exercise of this rule, no right or immunity granted by the constitution, laws, or treaties of the United States, is invaded or impaired.

It is under these well grounded fundamentals that we proceed to determine whether the Marshal for the Northern District of Oklahoma acted in disobedience of the order and judgment of the United States District Court of the Northern District of Oklahoma, when he returned the petitioner to the Warden of the Oklahoma State Penitentiary, after trial and sentence.

On February 5, 1939, the petitioner was in the exclusive custody and control of the Warden of the Oklahoma State Penitentiary in obedience to a judgment of the State court and no one, except those having the powers of executive clemency could modify or commute the judgment and sentence. Neither could this exclusive custody and control be wrested from the State through the exercise of the powers of Federal courts to issue a writ of habeas corpus ad prosequendum. However, it was within the power of the Federal Court to demand and the Warden of the Oklahoma State Penitentiary to grant temporary relinquishment of custody and control for purposes of trial in the United States courts in order to afford the petitioner a speedy trial, and for convenience in the administration of justice. The means afforded for this accomplishment lies in the power of the Federal court to issue a writ of habeas corpus ad prosequendum, in accordance with Section 453, 28 U.S.C.A., which authorizes the issuance of a writ of habeas corpus when necessary to bring a prisoner into court to testify. There is, however, no magic in the Latin phrase "ad prosequendum" when used in connection with a writ of habeas corpus. It is merely a product of the common law, which comes to us in forms of pleadings and practice. Ex parte Bollman, 4 Cranch 75, 8 U.S. 75, 98, 2 L.Ed. 554. The use of the phrase "ad prosequendum" confers no powers not granted by the constitution and laws of the United States.

The writ here was issued in accordance with a form, no doubt traditionally used for the purpose of acquiring temporary jurisdiction, and the language used therein is formal and may be subject to some ambig-

uity, but its legal import when measured by the rule which governs its issue, is unmistakenly clear and its offices and purposes here cannot be distorted.

The writ commands the Warden of the Oklahoma State Penitentiary to deliver the body of the petitioner to the Marshal for the Northern District of Oklahoma, for the purposes of trial on an indictment returned to that court and specifically commands the Marshal to make return as "provided by law." In these circumstances, it cannot be presumed that the United States District Court made demand upon the Warden of the Oklahoma State Penitentiary for the custody of the petitioner in derogation of the rule of comity, which governs the exercise of the power to command. Likewise, it cannot be presumed that the judgment and sentence was contrary to, or intended to violate the rule. The Marshal in making his return on the Writ stated that he returned the petitioner to the Warden of the state penitentiary, as "within commanded." Here again, the full legal import of the writ, and the judgment and sentence of the court was understood by the Marshal to be in accordance with the established rule governing its exercise. The Marshal returned the petitioner to the Warden of the Oklahoma State Penitentiary because the law did not authorize him to do otherwise.

The petitioner relies upon Smith v. Swope, 9 Cir., 91 F.2d 260, but in our view the petitioner is not aided by the reasoning or conclusions there. In the Swope case, the United States Marshal had exclusive custody of the petitioner, who had previously been sentenced by the Federal court. In disobedience of the judgment and commitment of the Federal court, the Marshal surrendered the petitioner to state authorities pursuant to which, on a plea of guilty, he was sentenced to a term in the California state prison. On his release from the state prison the Federal Government sought to enforce its judgment commencing on the date of his release. The court held that the United States Marshal had no authority to surrender the prisoner to the state authorities for the purpose of serving a sentence in the State penitentiary. In these precise circumstances, the judgment of the court, which ordered the Marshal to forthwith deliver the prisoner to the United States Penitentiary, was not subject to modification by the unauthorized act of the Mar-

shal in surrendering the prisoner over to the state authorities and hence the sentence commenced to run, and did run, in accordance with the judgment of the court.

The valid distinction lies in the fact that here the Marshal of the Northern District of Oklahoma did not have exclusive jurisdiction of the petitioner, neither did he have the power in his own right, or acting in obedience to the writ of habeas corpus ad prosequendum to acquire exclusive jurisdiction and control of the petitioner.

■ Obviously, as we have suggested, the custody and control of the Marshal over the petitioner was limited to the purposes for which he was obtained from the state authorities. This distinction is made clear in Zerbst v. McPike, 5 Cir., 97 F.2d 253, 254, wherein the state of Louisiana had exclusive custody and control of the defendant and he was brought into the Federal court by the state officers where he was sentenced on a federal charge, and returned by the state officers to the county jail. The commitment of the Federal court was not executed on the date of the sentence, but the return on the writ recited that defendant was confined as a prisoner in the Louisiana State Penitentiary. After his release from the state penitentiary he was taken on an alias commitment to the federal penitentiary. The court recognized the rule of comity existing between sovereignties and held that the state authorities "loaned" the defendant to the Federal Government for the purposes of trial, after which it became the duty of the Federal Government to return him to the exclusive custody and control of the state authorities. That his federal sentence could begin to run only from "the date on which (he) is received at the penitentiary, reformatory or jail for service of said sentence" in accordance with 18 U.S.C.A. § 709a.

This court recognized the distinction in Zerbst v. McPike and Smith v. Swope, supra, in Rohr v. Hudspeth, 10 Cir., 105 F.2d 747. The facts in that case are analogous to the facts here. The federal authorities acquired custody and control of the defendant from the state authorities on a writ of habeas corpus ad prosequendum. After having been sentenced by the Federal court the petitioner was returned to the state authorities, after which he was tried on a state charge which resulted in a mistrial, and the case was

later dismissed. The petitioner was then delivered to the United States Marshal and was committed to the penitentiary approximately five months after the date on which he was sentenced. There the question was whether the sentence commenced on the date it was imposed by the Federal court, or the date on which finally committed to the penitentiary. In deciding this question this court followed the reasoning and conclusions in the McPike case, supra, but stated that a different situation might be presented if the Marshal had exclusive custody of the petitioner on the date of sentence, and had failed to obey the judgment of the Federal court by surrendering him to the state authorities. Under such circumstances, Smith v. Swope, supra, would apply.

Here, as in Rohr v. Hudspeth, supra, and Zerbst v. McPike, supra, the United States court for the Northern District of Oklahoma acquired only such custody and control of the petitioner under the writ of habeas corpus ad prosequendum as the well established rules of comity recognize and it was the right and the duty of the court acting, through the United States Marshal, to exercise only such jurisdiction over the petitioner as the rules of comity permitted and no other. The Warden of the Oklahoma State Penitentiary had no power or authority to release custody to any one in derogation of his duty to keep him safely until the judgment and sentence was executed.

We hold in these circumstances, that the custody and control of the United States Marshal, and of the United States court, over the petitioner was temporary and that the Marshal acted in accordance with the established rules of comity and in obedience to the writ of habeas corpus ad prosequendum, under which he acquired jurisdiction of the petitioner when he returned him to the Warden of the state penitentiary.

There are other compelling reasons for holding that the sentence imposed by the United States District Court for the Northern District of Oklahoma did not commence to run on February 9, 1939, the date on which it was imposed. 18 U.S.C.A. § 709a, enacted June 29, 1932, provides that: "The sentence of imprisonment of any person convicted of a crime in a court of the United States shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of said sentence: Provided, That if any such person shall be committed to a jail or other place of detention to await transportation to the place at which his sentence is to be served, the sentence of such person shall commence to run from the date on which he is received at such jail or other place of detention. No sentence shall prescribe any other method of computing the term."

Obviously, the petitioner was not received at the penitentiary, or committed to a jail or other place of detention to await transportation to the penitentiary until November 2, 1940, and no other place was designated by the Attorney General, having such exclusive power to so designate, for the service of the sentence. 18 U.S.C.A. § 753f. Therefore, under the statutes which are mandatory and binding upon the sentencing court and the petitioner, he did not commence the service of his sentence until he was committed to the Federal Penitentiary at Leavenworth, Kansas on November 2, 1940, and the judgment of the District Court is affirmed.

HUXMAN, Circuit Judge (dissenting).

I am not in disagreement with my associates on the principles of law which apply in this case. It is recognized without exception that a state which first obtains jurisdiction and control of a prisoner may retain the exclusive control of him until its sentence and judgment have been completely executed. It may not be compelled by writ of habeas corpus or otherwise to surrender him to another sovereign for any purpose, either conditionally or absolutely. As stated in the majority opinion, by comity between states, one sovereign may recognize a request from another for the delivery of one in its custody. That comity is not restricted, however, to requests for temporary possession of a prisoner. It extends to all requests. Nor can it be said that under the rule of comity a request from one sovereign to another, whether for the temporary or absolute custody of the prisoner, is generally granted. Many elements enter into a consideration of such a request, such as the desperate character of the prisoner, the sentence he is serving, the crime with which he is charged in the other jurisdiction, and the severity of the sentence that would be imposed there as compared with the present sentence. The most, then,

658

that is required under the rule of comity is that the rquest be given respectful consideration. No presumption, therefore, flows from the rule of comity as to the character of the surrender of possession of the prisoner or what the parties had in mind regarding the same.

Oklahoma could then have delivered petitioner to respondent for the purpose of prosecution, upon condition, however, that he be returned at the conclusion of the trial to finish his state sentence, or it could have delivered him upon condition that if convicted he serve his federal sentence and then be returned, or it could have delivered him unconditionally. Our province is to determine what was done. In resolving this question, we must first consider the request or the writ itself, the response of the state thereto and the reasonable inferences flowing therefrom. We must not wander off into the realm of speculation or draw inferences of what ordinarily might follow in such cases. Oklahoma having the right to deny the request in toto, on condition, or grant it absolutely, no inference can be drawn as to what it intended, other than that which reasonably flows from the nature of the request and its response thereto.

Let us then look to the writ itself. What did the federal court ask of the state? The title of the writ, "Ad Prosequendum", or, for the purpose of prosecution, is of no help. I cannot agree with the statement of the majority that "the writ here was issued in accordance with A form, no doubt traditionally used for the purpose of acquiring temporary jurisdiction * * *." It finds no support in the record. I doubt if a traditional form of writ can be found or employed because of the very nature of the writ itself. The form in each instance must depend upon the nature of the request addressed to the sovereign.

What the federal court said was: "By this writ I am asking the following of you * * *." Then it commanded the warden to deliver the prisoner to the marshal for prosecution in the federal court. Had the writ stopped there, it might be fairly implied that it was understood that the prisoner was to be returned. But had that been the intent, or had it been thought necessary to clarify the intent, it could have been done by language substantially as follows: "To be returned to the state at the conclusion thereof to complete his state sentence." Such a provision is generally found in a writ where the federal court holds that the surrender was only conditional. I know of no case where the court has held otherwise on a writ that was absolute on its face. Such a provision was included in the writ we considered in Rohr v. Hudspeth, 10 Cir., 105 F.2d 747, and that opinion recognizes that the decision might be otherwise on a writ absolute on its face.

But this writ did not stop here. It commanded the marshal when he possessed the prisoner not to return him to the state penitentiary but to hold him subject to the further orders of the court. This language was inept and entirely inappropriate in a writ which requested the temporary possession of a prisoner and contemplated that the marshal should return him to the place from whence he came. Here there is no limitation upon what the future orders of the court might be. It could, as it did, sentence him and command the marshal to confine him in the federal penitentiary. So it appears that, looking at the writ itself, it does not ask for a conditional delivery of the prisoner, but asks for his delivery under such conditions as would entitle the court to retain absolute custody and control of him. The warden of the state penitentiary must be presumed to have known that this was the purport of the writ. He could have refused to grant it or could have insisted that it be clarified and that a provision be inserted therein which would require the return of the prisoner to the state penitentiary before he surrendered possession of him. But instead he delivered the prisoner over to the marshal under a writ absolute on its face and which purports to give the federal court authority to exercise absolute and exclusive control over the prisoner thereafter. It must be presumed, then, that he consented thereto. Whether the warden had authority to relinquish custody of the petitioner, either conditionally or absolutely, is beside the point. That might be pertinent if a conflict had arisen thereafter between the two sovereigns over the custody of the petitioner. The lack of legal authority in the warden to surrender absolute possession of the petitioner would not warrant the marshal of the federal court to return him to the state penitentiary unless directed to do so by the federal judge.

After imposing sentence, the journal entry of judgment provided that the prisoner be committed to the custody of the

attorney general for imprisonment on his federal sentence. When was he to be delivered to the attorney general? At the conclusion of the state sentence? The answer must be no. It was the court's duty to fix not only the length of the sentence, but also the time when it began. A sentence by a federal judge may not be left suspended in midair. The judge could not impose a sentence to commence at some indefinite time in the future. McPike & Zerbst, D.C., 21 F.Supp. 961. 18 U.S.C.A. § 709a, contemplates that the sentence begins to run from the time the marshal receives the commitment, which is the order to execute the sentence. And we should so hold unless there is something in the sentence or order of commitment clearly indicating the contrary.

The judgment provided that a certified copy of the judgment be delivered to the marshal as his commitment. Had the marshal been in doubt as to what he should do with the prisoner under the commitment and had he sought legal advice from his legal adviser, the district attorney, and forgetting that the prisoner came from a state prison, is there any doubt but what the district attorney would have advised him that it was his duty under the commitment to forthwith deliver the prisoner to the institution selected by the attorney general for the execution of the sentence? It is manifest to me that if we consider the writ and the judgment and the commitment of the court, the only conclusion we can draw therefrom is that the writ under which the federal court asked for the possession of the prisoner, asked for his absolute possession; that the warden of the state penitentiary delivered the possession of the prisoner under this broad and expansive request, and the only presumption that flows from his conduct is that he surrendered absolute possession of the prisoner, if the federal court saw fit to exercise its jurisdiction to that extent.

The writ of habeas corpus is a shield that guards and protects the constitutional liberties of the American citizen. Through it we inquire to see whether fundamental rights have been violated. Its function or use should not be construed or employed so narrowly as to defeat the salutary purpose it serves in our system of government. All matters or proceedings seeking to restrain one of his liberty should be strictly construed against the government and in favor of the citizen. While an action of habeas corpus is a civil proceeding, it is most generally employed in criminal proceedings. While to me there is no doubt as to the nature or meaning of the request addressed to the State of Oklahoma, as I glean it from the four corners of the writ, nor as to the judgment and commitment of the federal court, whatever presumption need be indulged in, in construing the effect of the writ and the judgment and commitment of the court should be liberally construed in favor of the petitioner.

In my view, the principles announced in McPike v. Zerbst, supra; Smith v. Swope, 9 Cir., 91 F.2d 260; Albori v. United States, 9 Cir., 67 F.2d 4, are controlling, and should determine the question under consideration. For these reasons, I am forced to respectfully dissent.