**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Lyle Curtis HOUGH, Defendant.**

**Crim. No. 23621.**

United States District Court
S. D. California, S. D.

Dec. 16, 1957.

772

Laughlin E. Waters, U. S. Atty., Max F. Deutz, Chief Asst. U. S. Atty., Los Angeles, Cal.

John K. Duncan, Asst. U. S. Atty., San Diego, Cal., for the United States.

Lyle Curtis Hough, pro se.

WEINBERGER, District Judge.

Petitioner Lyle Curtis Hough has filed a motion under Section 2255 of Title 28 U.S.C.A., "for vacation or modification of sentence," imposed on March 26, 1954, by this Court.

On or about January 11, 1954, Hough was sentenced by the Superior Court of the County of San Diego, on a charge of armed robbery, to "five years to life," and was taken to the State Prison at Chino, California, to begin serving his sentence.

On January 27, 1954, Hough was indicted in this District and Division for violation of Title 18 U.S.C. § 2312, transportation of stolen car in interstate commerce.

On February 12, 1954, this Court ordered a Writ of Habeas Corpus ad Prosequendum to be issued commanding the authorities at Chino State Prison to present the defendant before the Federal Court on February 23, 1954, and at such other dates "as may be necessary in order to procure his presence for arraignment and plea and all other proceedings incident thereto * * * and at the termination of the proceedings against said defendant to return him to the custody of said State authorities." The writ issued as prayed for, and stated in part:

"The delivery of the body of said Lyle Curtis Hough to the Courtroom of said United States District Court as aforesaid, and the return by you of said defendant to your custody shall be deemed sufficient compliance with the writ."

Hough was then brought to this Court (it being noted on the minutes that he was in State custody) waived counsel and was arraigned and pleaded guilty; the date for his sentence was set for March 25, 1954.

On February 12, 1954, pursuant to order of this Court a "Writ of Habeas Corpus ad Prosequendum" in language identical with the previous writ was directed to the authorities of Chino State Prison, and Hough was brought into this Court for sentence. (It was noted on the minutes that Hough was in State Custody.) The following sentence was imposed:

"It is adjudged that the defendant is guilty as charged and convicted.

"It is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of five years, to run concurrently with sentence defendant is now serving under State Court Sentence."

This judgment was returned unexecuted by the United States Marshal.

On March 26, 1954, the defendant was again brought before the Court, at which time, according to the transcript of the proceedings, the Court stated:

"The United States attorney has raised some question as to the validity of these sentences in making their service concurrent with the State sentence. After some reflection, it appears to me that these sentences were void, they may be vacated at this time and a proper sentence be now imposed."

(Another defendant with whom we are not here concerned had been sentenced along with Hough.)

The judgment here complained of reads in part as follows:

"Now, on the 26th day of March, 1954, came the attorney for the government and the defendant appeared in person and it appearing to the Court that the sentence pronounced on March 25, 1954, is void and should be vacated and proper sentence imposed,

"It is ordered and adjudged that judgment and sentence pronounced March 25, 1954, be and it is hereby vacated.

"It is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of two years, service of said sentence to begin to run at conclusion of sentence under which defendant is currently incarcerated, to-wit, one imposed by a Superior Court of the State of California."

Hough's state sentence was later fixed at 6 years, and on April 18, 1957, after he had served 3 years and 29 days, he was released from the State prison.

The return on federal judgment of March 26, 1954, shows that on April 18, 1957, the United States Marshal assumed custody of Hough from detainer at the California State Prison at San Quentin and executed the judgment by delivering defendant on said date to the San Francisco County Jail, thence, on April 29, 1957, to the Federal Correctional Institution at Terminal Island, California.

On October 3, 1957, Hough filed the motion mentioned above. He contends that he began to serve his Federal sentence on the date it was first imposed, March 25, 1954, and that the second sentence of March 26, 1954, was void and beyond the jurisdiction of this Court in that after he had commenced to serve a valid Federal sentence, the Court increased his period of imprisonment.

When, on March, 25, 1954, the defendant received his first sentence in this Court, he was serving a State indeterminate sentence of 5 years to life imposed on January 14, 1954. When he was sentenced by this Court for the second time, on March 26, 1954, he was still serving his State sentence. The State did not determine the length of his sentence until December 3, 1956, when it was fixed at 6 years. He was released from State custody on April 18, 1957, after serving 3 years and 2 months and 4 days of the 6 years.

Thus, on April 18, 1957, when he was released from State custody, he would have had 2 years less 29 days of his first five-year federal sentence to serve, had

the concurrent sentence been valid, instead of the two years imposed under the second sentence. Of course, had his State sentence been fixed at a minimum of five years, and his release occurred correspondingly earlier, he might have served a longer total time under the first five-year "concurrent" sentence than his total time under the State sentence and the second or two-year federal sentence.

■ The time actually served is not the criterion for determining whether the second sentence increased defendant's punishment. That question must be determined as of the date the sentence was imposed; if the first sentence was valid, the second sentence constituted an increase in punishment and was void. Rutledge v. United States, 5 Cir., 146 F.2d 199; Ekberg v. United States, 1 Cir., 167 F.2d 380.

The defendant has not shown by his petition that he has served the first sentence, the second sentence, or any sentence. If the first sentence was valid except as to the concurrency provision, the defendant must serve a five-year sentence under federal jurisdiction; if such sentence was void in its entirety, then the defendant must serve a two-year sentence in a federal institution; if the second sentence was void in its entirety, the defendant still has part of his first sentence to serve, and if the second sentence was void except as to the provision vacating the first sentence, the defendant stands as a person validly convicted without having been sentenced.

Under no theory is the defendant entitled to a decision herein which would result in his freedom from federal custody. " 'Sentencing' is not a 'game in which a wrong move by the judge means immunity for the prisoner.' " In re Bonner, 151 U.S. 242, 14 S.Ct. 323, 38 L.Ed. 149; Bozza v. United States, 330 U.S. 160, 168, 67 S.Ct. 645, 91 L.Ed. 818; McDowell v. Swope, 9 Cir., 1954, 183 F.2d 856, 859.

Section 2255 of Title 28 U.S.C.A. provides that a prisoner in custody under sentence of a court established by Act of Congress *claiming the right to be released* may move the court under said section to vacate, set aside or correct the sentence.

■ The section was enacted for the purpose of minimizing the difficulties encountered in habeas corpus proceedings affording the same rights in another and more convenient forum. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232. In McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238, it was held that the only inquiry which may be made in a habeas corpus proceeding is the legality of the detention; that the only relief authorized is discharge or admission to bail if the detention be found unlawful, and that the writ may not be employed as a means of obtaining the judicial decision of any question which, even if determined in the prisoner's favor, will not result in his immediate release. See also Smith v. Hunter, 10 Cir., 201 F.2d 62; Oughton v. United States, 9 Cir., 215 F.2d 578, certiorari denied 352 U.S. 975, 77 S.Ct. 373, 1 L.Ed.2d 328; and Toliver v. United States, 9 Cir., 249 F.2d 804.

The defendant has not questioned the validity of his conviction nor has he claimed the right to be released from custody. There may be room to inquire whether he has properly titled his petition under Section 2255 of Title 28 U.S.C.A. Clark v. Memolo, 85 U.S.App.D.C. 65, 174 F.2d 978, 980.

■ Rule 35 of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A. provides for a motion which presupposes a valid conviction and affords procedure for bringing an improper sentence into conformity with the law. United States v. Morgan, 346 U.S. 502, 506, 74 S.Ct. 247, 98 L.Ed. 248; Duggins v. United States, 6 Cir., 240 F.2d 479, 483; Cook v. United States, 1 Cir., 171 F.2d 567, 570.

■ Where the petitioner appears in propria persona, as was observed by Judge Barnes of the Court of Appeals of the 9th Circuit, "the court itself undertakes to assure the litigant that no meritorious case be lost because of a lack of legal skill. Briefs are scanned with un-

jaundiced eyes and technical compliance with the Rules of Court is not stringently enforced. The dominant theme is liberality." Hoffman v. United States, 9 Cir., 244 F.2d 378, 379.

■ It is obvious that defendant's petition merits consideration whatever its label, and if the second sentence was invalid it should be corrected regardless of whether such correction results in a release from custody. Duggins v. United States, 6 Cir., 240 F.2d 479, 484.

Whether a federal sentence imposed to be served concurrently with a sentence previously imposed by a state court is valid is a question which has perplexed our federal courts and the duty of the sentencing judge becomes more difficult when the state sentence is an indeterminate one whose term has not yet been fixed. We have not been able to find a case where the validity of the so-called "concurrent" sentence such as we have here has been squarely presented for decision.

Among the cases we have reviewed because of their mention of the state-federal "concurrent" sentence are the following:

United States v. Raymond, 2 Cir., 218 F.2d 952, indicating that in the absence of a special designation by the Attorney General of a state institution there could be no concurrency.

United States v. Rivera, 2 Cir., 224 F.2d 88, 89: "Believing it to be illegal for a federal sentence to run concurrently with a state sentence, Judge Dimock corrected the sentence * * * to have the federal sentence of ten months run consecutively to the state term * * * suspended it and ordered ten months of probation * * *."

Harrell v. Shuttleworth, 5 Cir., 200 F.2d 490, 491: "Assuming that kind of sentence is permissible under 18 U.S.C.A. § 3568, it clearly was not intended in this case."

Booth v. United States, 9 Cir., 209 F.2d 183, 184: "Section 2255 relief is available to 'A prisoner in custody under sentence of a court established by Act of Congress * * *.' (Emphasis supplied.) Booth is currently under sentence of a state court. The fact that federal sentences have been imposed which are to run concurrently with the state sentences does not make the state custody 'custody under sentence' of a federal court. * * *"

United States v. Tacoma, 2 Cir., 199 F.2d 482, 483—

"Moreover, acceptance of the appellant's contention would mean that where a probationer is already in custody under a state sentence, as was the appellant, probation may never be revoked without resulting in making the sentence on the revocation run concurrently with the existing state sentence—a most undesirable result. * * *"

In Mahoney v. Johnston, 9 Cir., 1944, 144 F.2d 663, certiorari denied 324 U.S. 853, 65 S.Ct. 711, 89 L.Ed. 1413, defendants committed a bank robbery, were indicted and sentenced in the state court in Louisiana to a state penitentiary from 14 to 28 years. Defendants were then taken before the federal court and given a sentence of 15 years to run concurrent with the sentence the defendants were then serving in the Louisiana state penitentiary. The opinion states in 144 F.2d at page 664:

"No commitment by the federal court was then made but appellants were surrendered to Louisiana. They then began their imprisonment in the state penitentiary under the state sentence. On May 2, 1939, they were 'reprieved from their state sentences * * * and were turned over to the United States authorities, the condition of the release being that if they were released from a federal prison prior to the discharge date of their Louisiana sentences they were to be returned to serve out the balance of those sentences.'"

It appears that when the Louisiana institution surrendered the prisoners they were taken by the United States Marshal to the federal judge who committed them to the custody of the Attorney General on May 5, 1939, approximately 6 months after their federal sentence. The defendants petitioned for a writ of habeas corpus. In 144 F.2d at page 664 the court observed:

"Appellants do not contend that the sentence is invalid and that they must be returned to the Federal District Court for resentence. They contend that their federal sentence can be served only in the Louisiana state penitentiary—that is, that the court's sentence in effect commits them to the penitentiary. The sentence does not so read and the court has no power to make such a commitment. It must commit the prisoner to the custody of the Attorney General, who determines the particular penitentiary for the prisoner's confinement."

The court refused to consider in the habeas corpus proceeding whether the months of confinement in the Louisiana penitentiary should be deducted from the 15 year federal sentence.

In Banghart v. Swope, 9 Cir., 175 F.2d 442, 443, defendant was under sentence of an Illinois state court for 99 years; in 1934 he was brought before the District Court, found guilty of a federal offense, committed to the custody of the Attorney General for imprisonment of a total of 36 years. The sentence read in part:

"It appearing to the court that the defendant, Banghart, is now under sentence from Cook County, State of Illinois, for a term of ninety nine years imposed by the state court of Illinois, it is ordered that the defendant Banghart be returned to the custody of the Warden of the state prison, at Menard, Illinois, for the completion of his sentence and that the above sentence is to run concurrently with the sentence of ninety nine years."

In 1943, after the defendant had escaped from and had been returned to the state penitentiary, the Attorney General of the United States ordered him transferred to the United States Penitentiary at Alcatraz. Banghart petitioned for habeas corpus, contending that the trial court had fixed the place of confinement at the state penitentiary and the Attorney General had no power to order his removal to Alcatraz. The Court of Appeals of the 9th Circuit held that trial court had no jurisdiction to designate the place of confinement; that the order of transfer was a valid exercise of the power of the Attorney General of the United States under Section 4082 of Title 18 U.S.C.A. (The opinion is silent with reference to the action taken by the Illinois state authorities regarding the transfer.)

In Rayborn v. Swope, 9 Cir., 215 F.2d 604, the defendant was serving a life sentence in a state prison pursuant to a state court conviction. In 1947 he was given a 30 year sentence by a United States District Court to run concurrently with his life sentence; the court then ordered that he be returned to the custody of the state authorities to continue serving his life sentence. In 1952 on direction of the Attorney General he was transferred from the state penitentiary to a United States penitentiary in Indiana, subsequently to Alcatraz. The opinion does not mention any action of the state authorities with reference to the transfer except to say that they placed a detainer upon the defendant. He petitioned for a writ of habeas corpus in the 9th Circuit, contending that his transfer from state to federal authorities despite the sentencing court's order that he be returned to his Kentucky confinement was unlawful and that he should be discharged from custody. The 9th Circuit Court of Appeals in a per curiam opinion stated, pages 604, 605:

"The contention is without substance. It is the province of the Attorney General, not of the court, to determine the place of confinement. Mahoney v. Johnston, 9 Cir., 144

F.2d 663; Banghart v. Swope, 9 Cir., 175 F.2d 442."

The Werntz v. Looney, 10 Cir., 1953, 208 F.2d 102, the defendant was first given a sentence by a Kansas state court for concurrent state sentences of 10 to 20 years and 1 to 30 years; a year later he was taken before the United States District Court and sentenced to 20 years "to run concurrently with the sentence the defendant is now serving in the Kansas State Penitentiary at Lansing." The Attorney General of the United States then designated the state penitentiary as the place of confinement of the defendant. He was released on parole from his state sentence after 6 years and placed in Leavenworth, a federal prison. He petitioned for a writ of habeas corpus, alleging that because the federal court imposed a sentence concurrent with the state sentence, his federal sentence automatically expired with his state sentence. The court observed, page 104:

"*It was within the power of the federal court in the first instance to sentence this petitioner and to provide that the sentence should be served concurrently or consecutively with other sentences including those which were previously imposed by other courts.* United States v. Tacoma, 2 Cir., 199 F.2d 482; Zerbst v. Walker, 10 Cir., 67 F.2d 667. No contention is made that the petitioner is not being given credit for the time which he served in the state prison. It is apparent from the record that petitioner has not served the federal court sentence. * * *" (Emphasis supplied.)

In United States v. Binion, D.C., 13 F.R.D. 238, one of the issues was whether a probationer in one federal district could be indicted in another district, and whether the first district court had discretion to refuse his removal to the second. At page 242 of the opinion, Chief Judge Yankwich of this District (sitting in Nevada) observed:

"A Federal sentence does not begin until the defendant is received at the penitentiary, reformatory or jail for service of the sentence. 18 U.S.C.A. § 3568. If the defendant at the time of the sentence is in custody of state authorities, the Federal sentence does not begin to run until they have surrendered their custody. For this reason a Federal sentence cannot be made to run concurrently with a state sentence. Zerbst v. McPike, 5 Cir., 1938, 97 F.2d 253; Rohr v. Hudspeth, 10 Cir., 1939, 105 F.2d 747; Lunsford v. Hudspeth, 10 Cir., 1942, 126 F.2d 653; Hayden v. Warden, 9 Cir., 1941, 124 F.2d 514; Vanover v. Cox, 8 Cir., 1943, 136 F.2d 442; Hill v. United States, 10 Cir., 1951, 186 F.2d 669; Strewl v. McGrath, 1951, 89 U.S.App.D.C. 183, 191 F.2d 347."

We do not believe we are concluded by the language which we have italicized in the Werntz v. Looney case, supra. The two cases cited as the basis for the statement each involved two *federal* sentences made concurrent; further, the statement was not made as a ground for the court's decision.

■ We are in accord with Judge Yankwich's view expressed in the Binion case, supra, that a Federal sentence cannot be made to run concurrently with a state sentence, and we hold that such a sentence is void as beyond the jurisdiction of the court, for the following reasons:

■ 1. Such a sentence violates the "inviolable rules of comity." The defendant was in the exclusive custody of the State of California. The writ could give the Federal court no power to take the defendant from this *exclusive* custody for any purpose. The state merely loaned him to the United States for the purposes stated in the application and the writ: prosecuting him for the crime with which he was charged. The prosecution completed, the court was bound to return him as it found him, to-wit, the *exclusive* custody of the State of California. While the federal court, as it is bidden by Section 4082 of Title 18, committed the defendant to the custody of the Attorney

General after his conviction and sentence in federal court, such custody was not effective until after the defendant had been returned to the State prison pursuant to the promise contained in the writ which procured him, and the State had satisfied its demands against him, or relinquished him to the United States. Lunsford v. Hudspeth, 10 Cir., 126 F.2d 653, 655; Zerbst v. McPike, 5 Cir., 97 F.2d 253, 254; Gunton v. Squier, 9 Cir., 185 F.2d 470, 471; Harrell v. Shuttleworth, D.C., 101 F.Supp. 408, 409, affirmed 5 Cir., 200 F.2d 490.

■■ 2. Such a sentence amounts to a designation of a place of imprisonment, a designation which the Attorney General has the exclusive power to make. Title 18 U.S.C.A. § 4082; Garcia v. Steele, 8 Cir., 193 F.2d 276, 277; Mahoney v. Johnston, 9 Cir., 144 F.2d 663, 664, certiorari denied 324 U.S. 853, 65 S.Ct. 711, 89 L.Ed. 1413. The designation was so much a part of the sentence as to be inseparable, rendering the entire sentence void. As was said in In re Bonner, 151 U.S. 242, at page 259, 14 S.Ct. 323, at page 326, 38 L.Ed. 149:

"The law of our country takes care, or should take care, that not the weight of a judge's finger shall fall upon anyone, except as specifically authorized. A rigid adherence to this doctrine will give far greater security and safety to the citizen than permitting the exercise of an unlimited discretion on the part of the courts in the imposition of punishments, as to their extent, or as to the mode or place of their execution * * * *."

■ 3. Such a sentence amounts to fixing the commencement of the term in violation of Section 3568 of Title 18 U.S.C.A. It is our view that this portion of the sentence was not separable, rendering the entire sentence void, as distinguished from the sentence considered in Rohr v. Hudspeth, 10 Cir., 105 F.2d 747. This conclusion, however, is not particularly material to this case, for if the part of the sentence imposing a 5

year period of incarceration only were valid, the Court reduced it by the second sentence of 2 years, which it was permitted to do. Rule 35, Federal Rules of Criminal Procedure, Title 18, U.S.C.A.; Miller v. United States, 5 Cir., 224 F.2d 561, certiorari denied 350 U.S. 912, 76 S.Ct. 195, 100 L.Ed. 799.

■ 4. Similarly, the Court has no jurisdiction to pronounce a sentence which is so uncertain as to leave to the Attorney General the decision as to whether the intent of the Court shall be effectuated. As was said in Simunov v. United States, 6 Cir., 162 F.2d 314, 315, and Brooks v. United States, 10 Cir., 223 F.2d 393, 395:

"It is imperative in maintaining respect for judgments of courts that sentences in criminal cases should not be equivocal."

As may be noted from the cases we have reviewed, the "concurrency" contemplated by a sentence such as we consider here may not begin unless the Attorney General surrenders an important prerogative which he is given by law, that of the designation of the place of imprisonment of the defendant; nor can the "concurrency" be maintained unless that official surrenders another important prerogative, the right to transfer a defendant from institution to institution as he deems best for the interests of the defendant and society.

Our Government has provided machinery for the classification of the defendant in order that the proper place of confinement may be determined. Psychiatrists, chaplains, social workers, teachers and physicians work with the defendant; detailed reports are made; the classification is a continuous process. (See publication of Department of Justice, "Federal Prisons," 1956, page 6 et seq.).

The federal prisoner confined in a state institution is accorded the same treatment as those under sentence of a state court in which the prison is located. Rosenberg v. Carroll, D.C., 99 F.Supp. 630, and whatever type of rehabilitation they are given by the state, it is not

necessarily that contemplated by the laws of the United States.

While we do not base our decision upon this view, it appears to us that the prerogatives we have mentioned are so important to the maintenance of our United States administration of justice that the Attorney General has no right to surrender them.

Defendant urges error on the part of the court in refusing to allow defendant to change his plea to not guilty after the second sentence was imposed. Such a motion is addressed to the discretion of the Court, United States v. Harris, 2 Cir., 160 F.2d 507. He also asked to have an attorney appointed for him at the time of the second sentence. These contentions, in the absence of a protestation of innocence are entirely without substance, especially in view of the fact that the defendant waived counsel up to the time he made the request just mentioned.