# United States Court of Appeals
## For the First Circuit

No. 11-1775

UNITED STATES OF AMERICA,

Appellee,

v.

JASON W. PLEAU

Defendant, Appellant.

LINCOLN D. CHAFEE, in his capacity as
Governor of the State of Rhode Island,

Intervenor.

No. 11-1782

IN RE: JASON WAYNE PLEAU,

Petitioner.

LINCOLN D. CHAFEE, in his capacity as
Governor of the State of Rhode Island,

Intervenor.

Before

Lynch, <u>Chief Judge</u>,
Torruella, Boudin, Howard and Thompson, <u>Circuit Judges</u>.

**ORDER OF COURT**
**Entered: May 21, 2012**

Our decision in this case was released on May 7, 2012.

The Clerk's Office advises that, in the ordinary course, the

mandate would issue on May 29, 2012.[1]  The government has moved to expedite issuance of the mandate; defendant-appellant Pleau and intervenor Governor Chafee have moved for a stay pending certiorari.  Although the government has legitimate reasons for its motion, the date for issuance will remain May 29, 2012; but we see no basis for delaying issuance beyond that date.

A petition for rehearing would plainly be fruitless since the matter has now been twice fully briefed and the issues in both rounds were the same.  As for any request for a stay of mandate pending certiorari, the customary criteria are not met: even assuming a certiorari petition would present a non-frivolous question, there is no "good cause" for a stay, see Fed. R. App. P. 41(d)(2)(A), and there is a reasonable risk that the federal prosecution of Pleau will be prejudiced by any further delay in the proceedings.

The federal offenses of which Pleau is accused occurred on September 14, 2010.  Although the charged crimes occurred almost two years ago, and the indictment followed less than three months later, Pleau has not yet even been arraigned in federal district court because Rhode Island, which holds Pleau as a state prisoner, has refused to deliver Pleau into federal custody to answer the

---

[1]The procedural posture is unusual because the case was reheard by the court en banc, and the underlying proceedings comprised both an original request to this court for a writ of prohibition and an appeal from a district court order of debatable finality.

federal charges. The district judge ultimately issued a writ of habeas corpus expressly authorized by federal statute requiring that Pleau be brought to federal court, 28 U.S.C. § 2241(c)(5), but that writ was in turn stayed by a majority of the original panel as a result of appellate proceedings described in our decision.

Whether a non-frivolous issue could be presented by a certiorari petition might be debated. As the en banc majority decision reads United States v. Mauro, 436 U.S. 340 (1978), the state's ability to resist the writ depends entirely on a question to which the Supremacy Clause provides a plain negative answer, id. at 363, and no previous governor appears to have defied the writ in like circumstances. On the other hand, two dissenting members of the en banc court dispute the majority's reading of Mauro.

However, as to "good cause," Pleau's arraignment and initial proceedings looking toward an eventual trial should move forward immediately.[2] As time passes, necessary witnesses and other evidence may be lost, and Congress has underscored the strong public interest in the expeditious commencement of criminal trials. 18 U.S.C. §§ 3161 et seq. Indeed, the government says in its opposition that at least one of the witnesses is elderly, and others "live in marginal circumstances"; it also points out that the case against Pleau's co-defendant (Santiago) has effectively

---

[2]Proceedings could be protracted in a case such as this one when the Attorney General is required to decide whether to seek the death penalty. See United States v. Lopez-Matias, 522 F.3d 150, 155 (1st Cir. 2008).

-3-

been put on hold pending resolution of Pleau's custody issues, and if the stay is granted the government may have to move forward with the case against Santiago, possibly resulting in the inefficiency and expense of two major trials.

No threat exists of irreversible prejudice to Pleau or Rhode Island. A trial of Pleau is unlikely to occur before the Supreme Court could consider a <u>certiorari</u> petition, and were <u>certiorari</u> granted the Court could itself grant a stay of proceedings. Anyway, even if a trial occurred and Pleau and Chafee thereafter prevailed on their position, objections based on the detainer statute would not be mooted, <u>see</u> <u>Mauro</u>, 436 U.S. at 347-48, 365, and Pleau could be returned promptly to state custody.

Accordingly, the motion to expedite issuance of the mandate is <u>denied</u> insofar as it may seek issuance prior to May 29, 2012; but, for the reasons stated, a stay of mandate beyond that date is <u>denied</u>.

**TORRUELLA, <u>Circuit Judge</u>, with whom THOMPSON, <u>Circuit Judge</u>, joins, dissenting.** I respectfully dissent from the denial of the motion to stay the issuance of the mandate in this case. Federal Rule of Appellate Procedure 41(d)(2)(A) permits this Court to stay a mandate pending the filing of a petition for certiorari if the petition would "present a substantial question" and if there is "good cause for a stay." The inquiry contemplated by this rule "focuses on whether the applicant has a reasonable probability of

-4-

succeeding on the merits and whether the applicant will suffer irreparable injury." McBride v. CSX Transp., Inc., 611 F.3d 316, 317 (7th Cir. 2010) (internal quotation marks omitted). See also 20A James W. Moore et. al., Moore's Federal Practice, § 341.14[2] (Matthew Bender 3d ed. 2012). Both of these requirements are clearly satisfied here.

"To demonstrate a reasonable probability of success on the merits, the applicant must show a reasonable probability that four Justices will vote to grant certiorari and a reasonable possibility that five Justices will vote to reverse the judgment of [the Court of Appeals]." McBride, 611 F.3d at 317. Under Supreme Court Rule 10(a), the Court will consider granting certiorari if a court of appeals "has entered a decision in conflict with another United States court of appeals on the same important matter." In addition, under Supreme Court Rule 10(c), the Court will consider granting certiorari when a federal Court of Appeals "has decided an important question of federal law that has not been, but should be, settled by [the] Court, or has decided an important federal question in a way that conflicts with relevant decisions of [the] Court." Here, these factors weigh in favor of a grant of certiorari.

There can be no doubt that this case presents an "important question of federal law": the proper balance of power between the states and the federal government in the context of

custody over prisoners. Questions of federalism and the interaction between federal government and state government authority are some of the most important legal issues that the Supreme Court must resolve. The potential impact of this case on the rights of states is significant enough that the National Governors Association and the Council of State Governments, organizations representing the governors and elected and appointed officials of all 50 states, participated in this case as <u>amici curiae</u>. This case also has important implications for the rights of criminal defendants, as evidenced by the appearance as <u>amici curiae</u> of various organizations representing criminal defense lawyers.

Resolution of this question of federal law turns in large part on the proper interpretation of a Supreme Court case, <u>United States</u> v. <u>Mauro</u>, 436 U.S. 340 (1978). A dispute regarding the proper interpretation of a Supreme Court case is clearly one that is best settled by the Supreme Court. In addition, as explained by the dissent from the <u>en banc</u> decision, it can be argued that the <u>en banc</u> decision conflicts with <u>Mauro</u>, a relevant decision of the Supreme Court. <u>See</u> <u>United States</u> v. <u>Pleau</u>, No. 11-1775, slip op. at 15 (1st Cir. May 7, 2012) (Torruella, J., dissenting). Moreover, there is a split of authority among the circuits regarding the proper reading of <u>Mauro</u>. <u>Compare</u> <u>United States</u> v. <u>Trafny</u>, 311 F. App'x. 92, 95-96 (10th Cir. 2009), <u>United States</u> v. <u>Graham</u>, 622

-6-

F.2d 57, 59-60 (3d Cir. 1980), <u>cert. denied</u>, 449 U.S. 904 (1980), and <u>United States</u> v. <u>Bryant</u>, 612 F.2d 799, 802 (4th Cir. 1979), <u>with</u> <u>United States</u> v. <u>Scheer</u>, 729 F.2d 164, 170 (2d Cir. 1984).

Furthermore, if the Court does grant certiorari, there is a reasonable possibility that five Justices will vote to overturn the <u>en banc</u> majority's decision. Reasonable jurists can disagree regarding the proper interpretation of <u>Mauro</u>, as illustrated both by the debate within this Court and by the split in authority between the Circuits. It is by no means certain that the Supreme Court would agree with the <u>en banc</u> majority's decision.

There is also good cause to delay the issuance of the mandate. The majority argues that the mandate must be issued according to the normal schedule because the federal prosecution of Pleau must be allowed to resume as soon as possible. However, it is difficult to see what will be lost by allowing the Supreme Court time to decide whether or not to grant certiorari in this case. On the other hand, Rhode Island's interests could be irreparably harmed by Pleau's transfer to federal custody.

The State of Rhode Island has a public policy against the death penalty. In furtherance of this public policy, the State has an interest in preventing its citizens from being exposed to a prosecution that might result in the death penalty. Rhode Island also has an interest in upholding its sovereign right to refuse a request for a prisoner transfer, a right guaranteed by the express

-7-

language of the Interstate Agreement on Detainers.  Both of these interests could be irreparably harmed if Pleau is transferred before the Supreme Court has an opportunity to decide whether or not to grant certiorari.  The transfer of Pleau to federal custody could moot this case entirely.  In addition, as the en banc majority opinion recognized, "the governor could hardly obtain meaningful relief following a federal conviction of Pleau." Pleau, slip op. at 6.

Given the importance of the issues presented in this case and the risk of irreparable harm to Rhode Island's interests, I see no reason for the majority's haste to issue the mandate.  The Supreme Court may yet decide to uphold the en banc majority's opinion, but it may also decide to reinstate the original panel's decision.  The most prudent course of action for this Court seems to be to leave the status quo in place while the Supreme Court decides what it wants to do.  Therefore, I respectfully dissent.

By the Court:

/s/ Margaret Carter, Clerk.

cc: Hon. William E. Smith, Mr. David DiMarzio, Clerk, United States District Court for the District of Rhode Island, Mr. Goldstein, Ms.

-8-

Richards, Mr. Hoose, Mr. Lockhart, Mr. Mann. Mr. Behr, Mr. Cavanaugh, Mr. Fabisch, Mr. Haskell, Mr. Marx, Mr. Mirenda & Mr. Ferland.