**UNITED STATES of America, Appellee,**

v.

**Frederick D. GRAHAM, a/k/a Wayne I. Boykin, Bertil Hanson, Walter F. Smith, Milton Pierce, Appellant.**

**No. 80–1145.**

United States Court of Appeals, Third Circuit.

Argued May 22, 1980.

Decided June 6, 1980.

George E. Schumacher, Federal Public Defender, Pittsburgh, by Robert L. Lackey (argued), Asst. Federal Public Defender, Pittsburgh, for appellant.

Robert J. Cindrich, U. S. Atty., Pittsburgh, Paul J. Brysh (argued), Asst. U. S. Atty., Pittsburgh, Pa., for appellee.

Before ADAMS, VAN DUSEN and HIGGINBOTHAM, Circuit Judges.

**58**

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The question presented on this appeal is whether Article IV(a) of the Interstate Agreement on Detainers Act,[1] which provides the governor of a state thirty days in which to disapprove a request for temporary custody of a prisoner confined in that state, applies to a request for custody made by a federal court pursuant to a writ of habeas corpus ad prosequendum. We hold that Congress did not intend Article IV(a) to apply under these circumstances, and accordingly affirm.

### I.

■ In early June 1979,[2] the United States Marshal for the District Court of the Western District of Pennsylvania lodged a detainer against Frederick D. Graham, who was then in the custody of the State of Ohio awaiting trial on state criminal charges.[3] A federal grand jury indicted Graham on June 28 and charged him with two counts of interstate transportation of forged and stolen money orders in violation of 18 U.S.C. § 2314 (1976). The district court issued a writ of habeas corpus ad prosequendum on November 7, which ordered the Ohio authorities to make Graham available to the court on December 3. On November 28, the federal grand jury returned a superseding indictment against Graham that incorporated the original indictment and charged eleven additional violations of § 2314.[4]

Pursuant to the writ of habeas corpus ad prosequendum that had issued on November 7, Graham was transferred on November 30 from state custody to federal custody. Following his arraignment, Graham filed a motion to dismiss the superseding indictment on the ground that the United States violated Article IV(a) of the Interstate Agreement on Detainers Act by transferring him within thirty days of the issuance of the writ. Article IV(a) provides in pertinent part:

The appropriate officer of the jurisdiction in which an untried indictment, information, or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated: *Provided,* . . . That there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending State may disapprove the request for temporary custody or availability, either upon its own motion or upon motion of the prisoner.[5]

The prosecution conceded that the transfer of Graham to federal custody occurred less than thirty days after the issuance of the writ, but claimed that Article IV(a) does not apply to requests for custody issued by a federal court pursuant to writs of habeas corpus ad prosequendum. Following a hearing, the district court denied the motion to dismiss the superseding indictment.

Graham entered a conditional plea of guilty to count one of the superseding indictment and was sentenced to seven years

---

1.  18 U.S.C. App. pp. 1395–98 (1976).

2.  The record does not indicate the precise date on which the detainer was lodged.

3.  Graham subsequently was convicted on the state charges and sentenced to a term of imprisonment of fourteen to thirty-five years.

4.  While the original indictment was pending, Graham apparently was returned to state custody on two occasions after having been transferred to federal custody. Because a detainer had been filed prior to the transfers, Graham would be entitled to dismissal of the original indictment. Interstate Agreement on Detainers Act Article IV(e), 18 U.S.C. App. p. 1396 (1976). The two counts of the original indictment, which were incorporated in the superseding indictment, were dismissed, however, when Graham pleaded guilty to another count of the superseding indictment. *See* text at 58 *infra.* The violations of Article IV(e) therefore do not vitiate Graham's guilty plea or conviction.

5.  18 U.S.C. App. p. 1396 (1976).

imprisonment to run concurrently with the Ohio sentence he was then serving. The only question on this appeal is whether the district court erred in denying Graham's motion to dismiss the superseding indictment.

## II.

The Supreme Court, in an extensive opinion in *United States v. Mauro*[6] interpreting the Interstate Agreement on Detainers Act, addressed the question presented here—whether the provision in Article IV(a) affording the governor of the sending state thirty days in which to disapprove the request for custody applies where the requesting authority is a federal court acting pursuant to a writ of habeas corpus ad prosequendum. In *Mauro*, the Court held in part that where the United States lodges a detainer before a federal court issues a writ of habeas corpus ad prosequendum, the writ is a "written request for temporary custody" within the meaning of Article IV(a).[7] In support of its position that Congress did not intend the United States to be a "receiving party" under the terms of the Act, the government argued that the thirty day disapproval provision of Article IV(a) would violate the Supremacy Clause[8] because it in effect would authorize a state governor to disobey an order of a federal court issuing a writ of habeas corpus ad prosequendum. The Supreme Court rejected this interpretation of Congress' intent. Prior to the enactment of the Interstate Agreement on Detainers Act, the Court observed, a state clearly was forbidden by the Supremacy

Clause from disobeying a federal writ of habeas corpus ad prosequendum. The Court then held that Congress, in passing the Act, did not intend to confer on the states any power to resist a federal court order that they did not previously possess:

The proviso of Art. IV(a) does not purport to augment the State's authority to dishonor such a writ. As the history of the provision makes clear, it was meant to do no more than preserve previously existing rights of the sending States, not to expand them. If a State has never had authority to dishonor an ad prosequendum writ issued by a federal court, then this provision could not be read as providing such authority. Accordingly, we do not view the provision as being inconsistent with the inclusion of writs of habeas corpus ad prosequendum within the meaning of "written requests."[9]

■■ In light of this clear statement by the Supreme Court that, in enacting Article IV(a), Congress did not intend to confer on state governors the power to disobey writs issued by federal courts as "written requests for custody" under the Act, we conclude that the district court did not err in denying Graham's motion to dismiss the indictment. Inasmuch as the Governor of Ohio had no authority to refuse the request by the United States for custody of Graham, issued in the form of a writ of habeas corpus ad prosequendum, application of the thirty day period of repose set forth in Article IV(a) would serve no purpose contemplated by Congress. Accordingly, we hold that the transfer of Graham within

---

**6.** 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

**7.** *Id.* at 361–64, 98 S.Ct. at 1847–1849.

**8.** U.S.Const. art. VI, ¶ 2. *See generally Carbo v. United States*, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961) (a federal court possesses jurisdiction under 28 U.S.C. § 2241 to issue writs of habeas corpus ad prosequendum); *Ex parte Bollman*, 8 U.S. 46, 4 Cranch 75, 2 L.Ed. 554 (1807) (§ 14 of first Judiciary Act, 1 Stat. 81, authorizes federal courts to issue writs of habeas corpus ad prosequendum).

**9.** 436 U.S. at 363, 98 S.Ct. at 1848. In a footnote, the Court reviewed portions of the legislative history of the Act:

Both Committee Reports note that "a Governor's right to refuse to make a prisoner available is *preserved* . . . ." H.R. Rep.No. 91–1018, p. 2 (1970) (emphasis added); S.Rep.No. 91–1356, p. 2 (1970) (emphasis added). The Council of State Governments discussed the provision in similar terms: "[A] Governor's right to refuse to make the prisoner available (on public policy grounds) is retained." Council of State Governments. Suggested State Legislation Program for 1957, p. 78 (1956) (emphasis added).

thirty days of the issuance of the writ did not violate the Interstate Agreement on Detainers Act.[10]

The judgment of conviction will be affirmed.

---

**10.** Our holding today is in accord with the recent interpretation of Article IV(a) by the Court of Appeals for the Fourth Circuit. *Unit-* *ed States v. Bryant*, 612 F.2d 799, 802 (4th Cir. 1979).