TORRUELLA, Circuit Judge,
with whom THOMPSON, Circuit Judge,
joins, dissenting.
I respectfully dissent from the denial of the motion to stay the issuance of the mandate in this case. Federal Rule of Appellate Procedure 41(d)(2)(A) permits this Court to stay a mandate pending the filing of a petition for certiorari if the petition would “present a substantial question” and if there is “good cause for a stay.” The inquiry contemplated by this rule “focuses on whether the applicant has a reasonable probability of succeeding on the merits and whether the applicant will suffer irreparable injury.” McBride v. CSX Transp., Inc., 611 F.3d 316, 317 (7th Cir.2010) (internal quotation marks omitted). See also 20A James W. Moore et al., Moore’s Federal Practice, § 341.14[2] (Matthew Bender 3d ed. 2012). Both of these requirements are clearly satisfied here.
“To demonstrate a reasonable probability of success on the merits, the applicant must show a reasonable probability that four Justices will vote to grant certiorari and a reasonable possibility that five Justices will vote to reverse the judgment of [the Court of Appeals].” McBride, 611 F.3d at 317. Under Supreme Court Rule 10(a), the Court will consider granting certiorari if a court of appeals “has entered a decision in conflict with another United States court of appeals on the same important matter.” In addition, under Supreme Court Rule 10(c), the Court will consider granting certiorari when a federal Court of Appeals “has decided an important question of federal law that has not been, but should be, settled by [the] Court, or has decided an important federal question in a *24 way that conflicts with relevant decisions of [the] Court.” Here, these factors weigh in favor of a grant of certiorari.
There can be no doubt that this case presents an “important question of federal law”: the proper balance of power between the states and the federal government in the context of custody over prisoners. Questions of federalism and the interaction between federal government and state government authority are some of the most important legal issues that the Supreme Court must resolve. The potential impact of this case on the rights of states is significant enough that the National Governors Association and the Council of State Governments, organizations representing the governors and elected and appointed officials of all 50 states, participated in this case as amici curiae. This case also has important implications for the rights of criminal defendants, as evidenced by the appearance as amici curiae of various organizations representing criminal defense lawyers.
Resolution of this question of federal law turns in large part on the proper interpretation of a Supreme Court case, United States v. Mauro, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). A dispute regarding the proper interpretation of a Supreme Court case is clearly one that is best settled by the Supreme Court. In addition, as explained by the dissent from the en banc decision, it can be argued that the en banc decision conflicts with Mauro, a relevant decision of the Supreme Court. See 680 F.3d at 8 (Torruella, J., dissenting). Moreover, there is a split of authority among the circuits regarding the proper reading of Mauro. Compare Trafny v. United States, 311 Fed.Appx. 92, 95-96 (10th Cir.2009), United States v. Graham, 622 F.2d 57, 59-60 (3d Cir.1980), cert. denied, 449 U.S. 904, 101 S.Ct. 278, 66 L.Ed.2d 135 (1980), and United States v. Bryant, 612 F.2d 799, 802 (4th Cir.1979), with United States v. Scheer, 729 F.2d 164, 170 (2d Cir.1984).
Furthermore, if the Court does grant certiorari, there is a reasonable possibility that five Justices will vote to overturn the en banc majority’s decision. Reasonable jurists can disagree regarding the proper interpretation of Mauro, as illustrated both by the debate within this Court and by the split in authority between the Circuits. It is by no means certain that the Supreme Court would agree with the en banc majority’s decision.
There is also good cause to delay the issuance of the mandate. The majority argues that the mandate must be issued according to the normal schedule because the federal prosecution of Pleau must be allowed to resume as soon as possible. However, it is difficult to see what will be lost by allowing the Supreme Court time to decide whether or not to grant certiorari in this case. On the other hand, Rhode Island’s interests could be irreparably harmed by Pleau’s transfer to federal custody.
The State of Rhode Island has a public policy against the death penalty. In furtherance of this public policy, the State has an interest in preventing its citizens from being exposed to a prosecution that might result in the death penalty. Rhode Island also has an interest in upholding its sovereign right to refuse a request for a prisoner transfer, a right guaranteed by the express language of the Interstate Agreement on Detainers. Both of these interests could be irreparably harmed if Pleau is transferred before the Supreme Court has an opportunity to decide whether or not to grant certiorari. The transfer of Pleau to federal custody could moot this case entirely. In addition, as the en banc majority opinion recognized, “the governor could hardly obtain meaningful relief fol *25 lowing a federal conviction of Pleau.” Op. at 4.
Given the importance of the issues presented in this case and the risk of irreparable harm to Rhode Island’s interests, I see no reason for the majority’s haste to issue the mandate. The Supreme Court may yet decide to uphold the en banc majority’s opinion, but it may also decide to reinstate the original panel’s decision. The most prudent course of action for this Court seems to be to leave the status quo in place while the Supreme Court decides what it wants to do. Therefore, I respectfully dissent.